WYATT MOYE, Plaintiff in Error, v. EDWARD HERNDON, Defendant in Error.

1. EXPERTS: OPINIONS OF—EVIDENCE.—The opinion of an expert is competent evidence to go to the jury, on an issue involving the genuineness of a written instrument, although such expert be unacquainted with the handwriting of the writer of the instrument: but such evidence is intrinsically weak, and ought to be received and weighed by the jury, with great caution. *Moody* v. *Rowel*, 17 Pick. 493.

2. EVIDENCE.—The rules of evidence ought to be liberally construed for the advancement of justice.

3. INSTRUCTION.—It is not error for the court to refuse an instruction which has already been substantially given.

4. WRITING: ALTERATION OF.—The immaterial alteration of a written instrument by the holder, does not vitiate it, although made with a fraudulent design: the motive for an act cannot be inquired into, unless the act itself affects materially the rights of the parties.

In error from the Circuit Court of Monroe county. Hon. William L. Harris, judge.

The facts are sufficiently stated in the opinion of the court.

*W. F. Dowd*, for plaintiff in error.

1. The court erred in admitting the deposition of William M. Williams—he is a writing-master, and nothing more. His opinions as to whether additions and material alterations were made to the contract, were worth nothing more than any other person's. The only question at issue before the jury was, were the words "and guarantee its payment," added to the note ? The witnesses were allowed to state that they were clerks, and familiar with the examination and comparison of handwriting. Was it a question of skill or science, to determine whether the words were added to the contract ? Certainly not. The objection went to all the residue of their evidence. When the inquiry is into a subject-matter, the nature of which does not require any peculiar habits or study to qualify a man to understand it, the opinion of a witness is not admissible. *Carter* v. *Boehm*, 1 Smith, Lead. Cas. 286. The

Moye *v.* Herndon.

witnesses did not state they were experts in *deciphering instruments*. *The note was before the jury*. They were as good judges as a *clerk*.

Whenever the question arises from the obscurity *of the instrument itself*, experts cannot be called in, but the question is exclusively for the court and jury. *Reman* v. *Haywood*, 2 Adol. & El. 666 ; *Crofts* v. *Marshall*, 7 Car. & P. 597 ; 18 Johns. R.

Would not a clerk be far more competent to give his opinion of handwriting by comparison of manuscripts, than in this case ? Yet this cannot be done unless he has seen the party write. *Garrels* v. *Alexander*, 4 Esp. 37 ; *Powell* v. *Ford*, 2 Stark. 164 ; *Bromage* v. *Rice*, 7 Car. & P. 548 ; *Waddington* v. *Cousins*, 7 Ib. 595 ; *Doe* v. *Newton*, 5 Adol. & El. 514 ; *People* v. *Spooner*, 1 Denio, 343.

The opinions of experts have been admitted to translate an unknown language—to explain terms of art—to explain provincialisms—but never to testify as to whether a contract was altered or not, even to decipher handwriting. *Bank of Pennsylvania* v. *Haldeman*, 1 Penn. R. 161. *This case is decisive*. *Jackson* v. *Philips*, 9 Cowen, 94 ; *Wilson* v. *Kirkland*, 5 Hill, 182. ' See authorities referred to in *People* v. *Spooner*, 1 Denio, 343 ; 5 Eng. Law & Eq. R. 349.

2. The court erred, in refusing to give the second charge asked by plaintiff. The defendant, by his pleas, affirmed that the contract had been altered, by adding the words, " *and guarantee its payment*." This the plaintiff denied. The charge is, that the *onus probandi* is on the defendant in the first instance, and *unless the proof has been made in the cause*, they must find for the plaintiff. The refusal of the charge, is in effect to say, that the jury are to find for the defendant, and no proof is necessary to establish the only material issue. The mere retracing of the letters, &c., &c., does not alter or avoid the contract. 1 Greenl. on Ev. 98, § 74 ; *Costigan* v. *Mohawk & Hudson R. R. Co.*, 2 Denio, 609.

3. The court erred in giving the first charge asked by the defendant. It in effect says, that any alteration, material or immaterial, is presumed to have been made since the execution of

the instrument, and avoids it. The rule now fully established upon this subject is, that if an alteration appears on the face of the instrument, all the circumstances are to go to the jury, and they are to determine, whether the alteration was made before or after its execution. In this case, there is no alteration appearing on the face of the instrument. There is a mere blot on the note; the contract is all there, *in the same handwriting.* The jury were in effect charged, that unless this blot were accounted for by plaintiff, they must find for defendant. The whole matter must be left to the jury. Co. Lit. 225, a; 4 Term R. 338. In the case of *Steele* v. *Spencer*, 1 Peters, 560, a charge less objectionable was held erroneous. It is incumbent on the party who seeks to avoid an instrument, to show that the alteration was made after its execution and delivery. *Wickes* v. *Caulk*, 2 Har. & Johns. 41. In the case of *Davis* v. *Jenney*, 1 Met. 221, the court held that it devolved on the party assailing the instrument to make out his case.

4. The second charge given by the court, that a material alteration of an instrument by a stranger, avoids it, was the old English rule, but it has been overruled in all the modern cases. The doctrine contained in the charge was condemned in the most unqualified terms by Judge Story, as repugnant to common sense and justice. *United States* v. *Spalding*, 2 Mason, R. 478. A spoliation, or obliteration of an instrument, by accident, by a stranger, or in any manner otherwise than by the fraudulent act of the party himself, does not affect its validity. *Masters* v. *Miller*, 4 Term. R. 334, 335; *Rees* v. *Overbaugh*, 6 Cowen, 746; *Lewis* v. *Payne*, 8 Ib. 71; *Jackson* v. *Malin*, 15 Johns. 297; *Nichols* v. *Johnson*, 10 Con. R. 192. These cases are decisive against the fourth charge. An immaterial alteration *cannot defraud* any one.

5. The jury found the verdict without any evidence. The fact is, that an inkstand was accidently overturned, and made the blot on the note. There stands the original contract, legible and distinct, written in the same handwriting. The defendant takes advantage of this accident, to avoid if possible the payment of an honest debt. Wm. M. Williams, thinks that certain portions of the indorsement have been retraced with a pen, *not altered, not changed,* and the words thus retraced, themselves immaterial! *The*

*whole of the indorsement,* he says on cross-examination, was written in the same ink with which the name of "Edward Herndon" is written. The whole amounts to this, that the indorsement was written in thick ink, and some of the letters were retraced. The whole of the evidence of T. W. Williams, Elkin, and Pollard, amount to this, and nothing more, that some of the letters seem to have been retraced; the ink *seems* of a darker color; the ink with which the words "guarantee its payment" were written, *seems* to be written in ink of the same color as the retracing. The answer to all this is, that the pen did not make some of the letters distinctly the first effort, the ink being thick, and, as happens every day, were immediately retraced. But the ink was said to be darker. How easily this is explained. How often does it happen, that the pen is dipped in ink, does not write well, which being then shaken up, immediately becomes a little darker. Or if the drafts-man bears lightly on the pen, the ink appears much lighter, especially after the lapse of time, than when the writer bears heavily on the pen, as is certain to be the case, when he retraces letters to make them more distinct.

For the plaintiff, there stands the written contract, legible and distinct. The proof shows that Edward Herndon received $450 of Moye's money for the note. Herndon told Adams, before he sold the note to W. Moye, that he would guarantee its prompt payment, and after the trade was made, told him he had guaranteed its payment, or words to that effect. Mr. Houston's brief shows that the deficiency of the defendant's evidence was supplied by bitter denunciation and abuse. *The case having been on hand a long time, the note has been much torn and mutilated* by repeated examinations *of the experts* and others.

*James Phelan,* for defendant in error.

The gist of this case is comprised in a nut-shell. Herndon sold a negro *for* one Lindsay, to one Holly, who gave his note, payable to Herndon. Herndon then sold this note to Moye, for Lindsay. Lindsay bought the negro, for whom the note was given, from Moye. Upon this sale of the note by Herndon to Moye, Herndon made a *certain indorsement* on the back thereof, *around which*

*circles the important question in this case.* It is strictly a question of *fact.* Before discussing it, we will refer to the legal *history* of the case previous to the trial.

The writ was issued against Holly, as "*maker*," and Herndon, as "*indorser.*" The cause of action states it to be against Herndon, as "indorser." A branch writ was sent to Yalabusha, and executed on *Holly,* the maker. Herndon, the *indorser,* resided in *Monroe.* A *declaration* was filed against Holly and Herndon, as *maker* and *indorser.* Herndon thereupon filed his plea in *abatement,* because the suit was not brought in the county of the *residence of the maker.* A motion was then made by plaintiff, (Moye,) to dismiss his suit as to *Holly,* and to amend his *writ* and declaration. We deny that *this* should have been permitted. The statute requires that the *cause of action* shall be stated on the *writ,* or the suit shall be *abated.* Herndon had been informed by the writ, that the cause of action against him, was as "*indorser.*" When he appears to answer *that,* the plaintiff is permitted to discard it, and to substitute a radically *different* cause of action. He is then charged as "*guarantor,*" and not as "indorser ;" by which the whole legal character of the action is utterly changed. The plaintiff might, with equal propriety, have been permitted to substitute an action of *trespass* or *detinue. That* suit should have been abated, and the amendment refused. Such an amendment is not within the *discretion* of the court. It is in the teeth of the statute.

After the making of the amendment and the filing of a complaint against Herndon, as "*guarantor,*" Herndon pleaded in *abatement* the matter above stated, as connected with the writ. Defendant demurred, and the court sustained it. The *plea* then filed by defendant, and the subsequent proceedings, have been embodied in the *exceptions,* to which the court is now referred.

The plea was *non est factum,* stating certain alterations : First, that certain words had been re-written. Second, that the words "*and guarantee its payment,*" had been added. Third, that after the word "payment," an *obliteration* appears, so complete, that the words are not discernible. This was a question of mere *fact*

for the jury, and they found *for the defendant!* Unless the verdict is *against* the evidence, it will not be disturbed. So far from that being the case, we assert, there is not a particle of testimony against the *truth* of the verdict.

The *inspection* of the note *by the jury*, constituted the *best* evidence for their action, and by an *order* of the court below, the *original* note has been transmitted to *this* court for *its* inspection. The note is contained in a tin box, accompanying the transcript. The jury, and also the witnesses who were on the stand, examined that note critically, with the assistance of a magnifying eye-glass, and all testify that the alterations alleged, do exist. I suggest to the court, if it desires to be curious, to do the same thing. The alterations and additions, however, are plainly perceptible to the naked eye. They were made in 1851, and this case was tried in 1855. *Time* had done much, in rendering the alterations, &c., perceptible. The testimony of *William Williams* was taken in January, 1853, and had not the advantage of *two* years time, in its effect upon the writing. It is, however, strong for defendant.

The testimony of *Wesley Williams*, (one of the most technical critics of manuscripts in the *world*,) is plain and emphatic.

The witnesses, *Dollard* and *Elkin*, are finished clerk-experts, and familiar with the criticism of manuscripts. They sustain Williams, and further say, the alterations are plain to the "naked eye."

No objection was made to the *competency* of Williams, Dollard, and Elkin, as witnesses, in deciphering manuscripts as experts. Objection was made to their testimony, as being "*matter of opinion*," and properly overruled by the court. That the testimony was competent, we need not refer to authority. 1 Greenl. Ev. §§ 280, 287, 440, 578, and note; 1 St. Ev. 67; 2 Ib. 223; 17 Pick. 490; 4 U. S. D. 691, §§ 766, 767.

There is one other fact to which I would lastly call the attention of the court. It is the *necessity* and the *motive* which actuated the plaintiff, Moye, in changing the *indorsement* into a *guaranty*. He bought the note in *April*, 1851; it was due in *July*, 1851. Moye left Aberdeen in April, 1851, and did not return

until September, 1851. The note was then past due. Moye wrote to Holly on his *return*, who refused to pay the note, for reasons that could not get into the record. As an INDORSER, Herndon was discharged. Moye's only hope is to convert it into a *guaranty*, which dispenses with *notice*. He, therefore, *retraces* what was written, so as to give it *all* the same *appearance;* then adds the words, "*and guarantee its payment*," (as the court will see.) AFTER the date, which followed the indorsement, he also added something else, which he so completely obliterated, as to make the black ink soak through the paper, and so corrode the sheet, as to rot and separate it. The whole transaction was the most audacious villany, and the jury were not five minutes in so branding it, by their verdict.

The charges of the court are correct. All those asked by the plaintiff were *given*, except the *second*, and that, at least as copied by the clerk, appears unintelligible: but, in no case, could it have been correct. It confines the defence of the defendant to a *single alteration*, and excludes the matter of fraud from the jury, as connected with an immaterial alteration. It also imposes on the defendant *proof* of his alleged alteration, and deprives him of that *presumption* which arises where an alteration appears on the *face* of the instrument. In *such* case the presumption is, that the alteration was made *after* the execution of the instrument, without the maker's consent, and the *holder* must explain it. 8 S. & M. 375.

The charges *given* for the defendant are such plain law, as to need no argument or authority.

The third charge, *refused* defendant, is, at least, a vexed question, and the doubt was given to plaintiff.

*Locke E. Houston*, for defendant in error, made the following points, and referred to the following authorities:—

If the alteration in the indorsement was made after the signing by Herndon, and without his consent, then it was such a material alteration as to vitiate the whole note, and bar a recovery. See 1 Greenl. Ev. 672, 673, §§ 565, 566, and 675, § 568; *Commercial & R. R. Bank of Vicksburgh* v. *Lane*, 7 How. Miss. R. 414.

If on the production of an instrument, it appears to have been altered, it is incumbent on the party offering it in evidence to explain this appearance. See 1 Greenl. Ev. 672, § 564; 7 How. Miss. R. 414, 420.

All presumptions are against a party holding a negotiable paper that has been altered. 7 How. Miss. R. 420; Chit. Bills, 212; *Henman* v. *Dickinson,* 5 Bing. 184, (15 E. C. L. R.)

As to the competency of the testimony of experts, see 1 Greenl. Ev. 550, 551, § 440, and 695, n. 2; *Moody* v. *Rowell,* 17 Pick. 490; 2 Stark. Ev. 375, 376, n. 1.

FISHER, J., delivered the opinion of the court.

The defendant was sued in the Circuit Court of Monroe county, as guarantor of a promissory note made by one W. E. Holly, payable to the defendant, and by him indorsed to the plaintiff.

The indorsement, as it appears by the note in the record, is as follows: "I indorse this note to Wyatt Moye, for value of him received, April 22d, 1851, and guarantee its payment." Signed, Edward Herndon. The defendant pleaded under oath, that the words "and guarantee its payment," had been added to the indorsement without his knowledge or consent, after the delivery of the note to the plaintiff, and that the words constituting the indorsement as made by the defendant, had been retraced after such delivery with a pen. Issue being joined upon this plea, the jury found a verdict for the defendant. The plaintiff moved for a new trial, which was by the court below overruled, when the plaintiff took his bill of exceptions, embodying the evidence introduced on the trial, as well as the instructions asked by counsel, given and refused by the court.

It will at once be perceived that the main question for the jury to try was, whether the words constituting the guaranty had been added to the indorsement after the plaintiff came into possession of the note, as the other alteration was of itself wholly immaterial, except so far as it might serve to show a general uniformity in the entire writing, and thereby create the impression that it was all written by the same hand and at the same time. The signature of the defendant being admitted to the indorsement, the plaintiff's coun-

sel contented himself by merely reading the note and indorsement to the jury in the first instance, and there resting his case.     The defendant then introduced in regular order several witnesses, skilled as they each proved, in judging of various handwritings, and after inspecting the indorsement, each gave it as his opinion, that the letters constituting part of the indorsement had been retraced with a pen, and. that the words, " *and guarantee its payment,*" were written in ink of the same color as that used in retracing the letters.     It is, however, unnecessary to set forth the evidence at large, as it is its competency and not .its sufficiency, that calls for our decision.     The witnesses being wholly unacquainted with the handwriting of the parties, the question is, whether their testimony can be received, upon the principle that persons skilled in a particular science, may give their opinion touching matters connected therewith.     Or, to employ the language in general use as applicable to the subject under consideration, was it competent to receive the opinions of experts, as to the alteration or additions alleged to have been made in and to this writing.     In the case of *Moody* v. *Rowell,* 17 Pick. 493, the court, after a careful review of the principal authorities, held, that such evidence was competent, remarking at the same time, that it was agreed on all hands, that such evidence was in general deserving of little consideration ; but as already remarked, it is the competency, and not the sufficiency of the evidence to produce conviction on the minds of the jury, upon which we are called to decide.     The evidence being admitted, the presumption is, that the jury will give to it such weight, all the surrounding circumstances considered, as it ought to receive ; that they will inspect the writing for themselves, and will at the same time determine, wherein they have been aided by the opinions of others professing greater skill than themselves in such matters ; whether, in truth, the opinions of the witnesses are entitled to more weight than their own opinions, arising from an inspection of the writing ; and finally, that if the writing does not disclose the alteration on its face, or is not different from the admitted or established handwriting of the party proven to have written it, that though the contract may have been materially altered, yet it is difficult for any evidence, resting merely upon the opinions of witnesses,

to establish the fact beyond controversy. The most that can be attained by such evidence is strong probability that the fact is so. These remarks, however, will be understood as applying more properly to those ingeniously executed counterfeits of writings, which carry upon their face at least a reasonable degree of the probability of their genuineness. If the writing itself be suspicious, it may require but very slight evidence to turn the scale; and a jury, though supposed to be versed in the affairs and business transactions of life, and though possessed of even more than ordinary intelligence, might not at the same time possess that peculiar skill, which would enable them to decide upon the face of the paper. It is the nature of man to acquire a certain degree of skill, in that which he has set out to learn, and which he has long pursued as a vocation. An eye practised in judging writings, may, at a glance, detect irregularities or counterfeits about it, which would entirely escape notice or detection from an unpractised eye. The rules of evidence should be so moulded, as to make it at least possible to detect every description of forgery or counterfeits; otherwise, only the clumsily executed ones, would ever meet with detection or condemnation. Adroitness in their execution, would in many cases insure success to those who might forge or alter written instruments. Both government and law presuppose human weakness, and at least, the possibility of human depravity, and those connected with the administration of the law, know, perhaps from actual observation, that what is but a theory in government, is in many cases true as a fact. It is indeed part of the very law of evidence itself, that it will adapt its rules to every variety of case or question, which may arise for investigation in a court of justice. A clumsily executed counterfeit generally carries upon its face the evidence of its own condemnation. Not so, however, with respect to one ingeniously executed. An unpractised eye, or unskilled person in writing, can derive but little, if any aid, from the writing, in forming an opinion in such a case. To shut out the evidence which might be afforded by skilful persons in the art of writing, would be almost equivalent to saying that the law had provided no means by which well executed forgeries or imitations could be detected, and they must therefore be respected as genuine

instruments.. Every such investigation involves more or less a question of fraud; and it has long been an established rule, that courts would not hold themselves bound by any fixed definition of fraud, lest the ingenuity and artifice of dishonest men might devise means to evade the definition. The same may be said with respect to the rules of evidence in this class of cases. Narrow or contracted rules may enable persons of even tolerable skill to defy the scrutiny of a legal investigation, when under different rules detection would be certain.

It is believed, however, to be unnecessary to continue further the examination of this question. We believe the evidence offered by the defendant was competent, adopting at the same time the admonition of the Supreme Court of Massachusetts, that it ought to be received and weighed cautiously by the jury.

It is next assigned as error, that the court refused to give to the jury the following instruction, asked by the plaintiff's counsel, to wit: That under the pleadings in this case, it devolves on the defendant to prove that the words, "and guarantee its payment," on the back of the note, were placed there, without the knowledge or consent of Herndon, and unless this proof has been made, the jury must find for the plaintiff. This instruction, with slight modifications, might have been given, but it is made unnecessary by the fourth instruction, on behalf of the plaintiff, which the court gave, to wit: "If, in the opinion of the jury, there is no alteration apparent on the face of the paper sued on, then, under the issue in this case, it is incumbent on the defendant to show its existence by proof, and if he has failed to do so, they must find for the plaintiff." This instruction, in our opinion, announces the law correctly, and rendered the other instruction, if not improper, at least unnecessary.

The last error which we will notice as assigned by counsel, consists in the following instruction, given on behalf of the counsel for the defendant, to wit: "If the jury believe that an alteration in the indorsement was made, in a point '*not*' material, *fraudulently* by the holder, they must find for the defendant." We are of opinion that the court erred in giving this instruction. An immaterial alteration may be treated as no alteration. Perhaps

Moye *v.* Herndon.

under the English law, a different rule might with some, if not good reason, prevail, as all contracts which have been reduced to writing, must be stamped before they can be admitted in evidence, and the fraud spoken of, is a fraud not so much upon the party as upon the stamp laws, which are guarded with great vigilance by the government. But be this as it may, and conceding for the sake of the argument, that the instruction is sustained by respectable authority, yet we must be permitted to say, that the principle it announces is wrong. That which cannot by possibility work a change in the substantial part of the contract, cannot be said to be an alteration of it in a legal sense. If one party can receive no more than he was to receive under the terms of the contract, and the liability of the other remained the same as when he gave his consent to it, the change, whatever it may be, or may have been, cannot be said to be material, and if not material, it must be treated as nothing. If this position be true, the act cannot be the subject of a judicial investigation, and if the act itself be unimportant, upon what principle is it that the court can undertake to probe the motives of the party who committed it. If there be fraud at all in such a case, it can only be such as a bad motive can affix to an immaterial act, and if the act itself is incapable of working an injury, to wit, of changing the rights or obligations of the parties to the contract, it cannot in a legal sense be said to be fraudulent, for the obvious reason that courts of justice only regard that as fraudulent, which is capable of producing an injury or loss to the other party to the controversy. Any other rule would simply amount to this: the defendant would say to the plaintiff, it is true your act was harmless, and amounted to nothing, but your motives were bad, and I therefore claim an exemption from my contract. It may be stated as a rule without exception, that when men's acts cannot be the subject of judicial investigation, their motives cannot be inquired into. It was therefore, possible for this instruction to mislead the jury, as their minds may have been drawn away from the main question, to wit: the material alteration. It is not intended to intimate that the immaterial alteration was not competent evidence to go to the jury, to aid in the investigation of the main fact. The immaterial alterations may have been made,

if at all, (about which no opinion is intimated either way,) with a view of giving to the writing as a whole, the same general appearance, thereby making detection as to the material part, more difficult. Both acts and motives, when intended to aid in the establishment of the main fact, may be considered.

We are of opinion, for the reason above named, that the judgment ought to be reversed, and a new trial granted. The jury ought to be left to weigh the evidence, trammelled with as few instructions as possible, as there is really nothing but a pure question of fact involved.

Judgment reversed, and new trial granted.