### T. R. COLEMAN, ADM'R, *v.* W. T. ADAIR.

1. JURY TRIAL. *Instruction. Weight of evidence.*

   It is the province of the jury to decide upon the weight of evidence, and an instruction thereon is erroneous.

2. SAME. *Assumption of fact.*

   An instruction which assumes a disputed matter of fact to be true, without reference to the belief of the jury, is erroneous.

3. SAME. *Witnesses. Experts.*

   The evidence of expert witnesses is, as a matter of law, neither intrinsically weak or strong; of its weight and worth the jury must judge, free from the influence of instructions thereon.

4. SAME. *Genuineness of signature. Comparisons.*

   A jury should not disregard all other evidence, and pronounce a disputed signature genuine, from a comparison of the same with other signatures proven or admitted to be genuine, because the one in dispute is thought by them, from such comparison, to be similar to the proved or admitted ones. An instruction authorizing them so to do is erroneous.

FROM the circuit court of Montgomery county.

HON. W. F. STEVENS, Judge.

This was a suit by appellee, Adair, against the appellant, Coleman, as administrator of the estate of John H. Kent, deceased. The declaration contained a count upon a note for $1,000, executed by the intestate, Kent, and also a count seek-

ing a recovery of a like sum of money averred to have been lent by appellee to the intestate, at the date of the note, and an implied promise to repay the same. The pleas to the count on the note were *non assumpsit, non est factum* and want of consideration. To the demand for money lent, the defense was a general traverse of the facts averred in the declaration. The evidence showed that Kent, the intestate, at the date of the note was an old and infirm man, and that he died in eleven days thereafter. There was evidence to the effect that Kent, who was sick the day before the date of the note and on the day of its date, never left the dwelling house of his son-in-law (appellant) after the day on which the note is dated until his death, and the appellant, who took immediate control of his effects, never found among them any money save thirty dollars, and never could find or account for the $1,000 for which it was claimed the note was executed, and which appellee claimed to have loaned him on the day the note was executed. Several witnesses, experts in handwriting, testified, and most of them gave evidence to the effect that the signature to the note was not in Kent's handwriting. A number of signatures of Kent were introduced in evidence, which were proved or admitted to be genuine.

The third, fifth and sixth instructions for the plaintiff below (appellee) commented on by the supreme court, were as follows, viz.:

"3. Although it may appear, from the evidence, that the defendant has been unable to account for the $1,000 sued for in this action, or to show what disposition John H. Kent, the deceased, made of the same, it does not follow, from this fact, that the said Kent did not get the money from the plaintiff, and if they believe, from the evidence, that said Kent did get the money from plaintiff and execute the note sued on for same, they will find for plaintiff."

"5. The court instructs the jury that, while the opinion of an expert is competent to go to the jury on an issue involving

the genuineness of a written instrument, yet such evidence is intrinsically weak, and ought to be received and weighed by the jury with great caution; and they should give it such weight only as they may think it is justly entitled to receive in view of all the evidence in the case."

" 6. The court instructs the jury that they are authorized to compare the handwriting of John H. Kent, deceased, with any of the checks and other papers which have been introduced and proven as signed by deceased with the signature to the note here sued on, and to determine for themselves, from comparison, whether the signature to the note here sued on is similar to the signature to the checks and other papers which are proven to be genuine, and judge for themselves whether the signature to the note is genuine or not; and this is true, although an expert has testified that the signature to the note is not exactly like the signature to the checks and other papers."

*Somerville & McLean*, for appellant.

The third instruction for the plaintiff below is erroneous in assuming that the $1,000 sued for was a genuine, and not a fictitious, sum of money. It is also vicious in that it may have led the jury to believe that defendant in court below was under obligation to account for the disposition of the money. It leaves the implication that Kent's administrator was under obligation to account for the $1,000.

Instruction No. 5 for plaintiff below is clearly erroneous in several particulars. In the first place, it is upon the weight of evidence, and is directly forbidden by § 732, code 1892. *Railway Co.* v. *Whitehead*, 71 Miss., 451; *Thompson* v. *State*, 73 Miss., 584, 587; Underhill on Evidence, sec. 190.

The sixth instruction for plaintiff below is erroneous. It is an appeal to the prejudices of the jury, and has a tendency to mislead them. The similarity of the signature in dispute to genuine signatures may well be the result of design if there was a forgery.

*Sweatman, Trotter & Knox*, for appellee.

We do not understand that a court is precluded from advising the jury about different classes of evidence, nor of the character of such classes. So doing is not instructing on the weight of evidence. There is primary and secondary evidence, direct and presumptive evidence, positive and hearsay evidence, and other kinds or classes. The court may instruct about these different classes, the character which each has under the law, but cannot instruct on the weight of evidence as compared with other evidence of its class. The instructions complained of are not on the weight of evidence.

The fifth instruction merely told the jury that they were authorized to compare the genuine signatures with the disputed one, and that the fact that experts had testified did not preclude them from making the comparisons. This was correct. *Garvin* v. *State*, 52 Miss., 209; *Cheatham* v. *State*, 67 Miss., 345.

WOODS, C. J., delivered the opinion of the court.

The third instruction given for the plaintiff below is erroneous. It is clearly a charge upon the weight of that evidence which was offered by the defendant, to the effect that the administrator knew nothing of the possession by his intestate of the thousand dollars sued for, and was unable to give any account of it, or to show what disposition his intestate made of it. Practically, the jury was informed by this charge that these facts, under the circumstances of the case, were without any value. These facts should have been submitted to the jury for their consideration, and should have received from the jury such weight as the jury thought them entitled to, without any intimation from the court that they were valueless. The instruction should have informed the jury that it did not necessarily or conclusively follow from these facts that Kent did not get the money sued for. The instruction is, moreover, objectionable in seeming to assume, in its beginning, that the thousand dollars had been gotten. It is true the instruction concludes

by an accurate legal statement, but this does not cure the faults adverted to by us.

The fifth instruction of the plaintiff below was a charge upon the weight of the evidence, and was error. The evidence of experts is neither intrinsically weak nor intrinsically strong. Its strength, or its weakness, depends upon the character, the capacity, the skill, the opportunities for observation, the state of mind of the expert himself, and on the nature of the case, and all its developed facts. Like any other evidence, it may be entitled to great weight with the jury, or it may be entitled to little; but of its weight and worth the jury must judge without any influencing instruction, either weakening or strengthening, from the court.

Now, the defendant's plea of *non est factum* was, of necessity, largely and chiefly supported by the evidence of expert witnesses in handwriting, and this charge upon the weight of the evidence of these important witnesses so weakened and neutralized its force and effect with the jury as to make it capable of disastrous consequences to the defendant. See *Railway Co.* v. *Whitehead*, 71 Miss., 451, which is directly in point, and the cases there cited.

The sixth instruction given for plaintiff below was incorrect. By its terms the jury may have thought itself authorized to pronounce the disputed signature to the note sued on genuine, if the jury, from a comparison of this signature with other proved genuine signatures of the intestate, thought the disputed signature similar to the proved genuine ones. That is exactly what the instruction says, as we think, after repeated examinations of it. Moreover, the charge seemingly authorizes the jury to disregard all the expert evidence, if the jury, composed of men presumably not experts in handwriting, thought, from their own comparisons, that the signature to the note sued on was similar to the admittedly genuine ones, though all the experts thought it not genuine, and gave their reasons for so thinking. It was well calculated to induce in the mind of the

jury the belief that they might wholly disregard the expert evidence if it did not coincide with their own opinion, formed by comparison of the different signatures, though not one of the jury was presumably capable of giving an opinion as experts as to handwriting.

*Reversed.*