## HARRISON *v.* EAGLE LUMBER & SUPPLY CO.*

(Division A.   Dec. 10, 1928.)

[119 So. 203.   No. 27394.]

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, section 731, p. 816, n. 19; Evidence, 22CJ, section 877, p. 774, n. 16; section 878, p. 776, n. 28; Trial, 38Cyc, p. 1351, n. 5; On admissibility of genuine writings for the purpose of comparison, see 10 R. C. L. 995; 2 R. C. L. Supp. 1130; 5 R. C. L. Supp. 578.

*White & Scanlon* and *Buntin & McIntosh,* for appellant.

*J. D. Arrington,* for appellee.

470

*Ford, White, Graham & Gautier,* also for appellee.

McGowen, J. The appellee, Eagle Lumber & Supply Company, filed its declaration in the county court of Harrison against appellant. The declaration contained four counts, three of which were abandoned, but upon the remaining count, based upon a promissory note for eight hundred sixty-two dollars and sixty-two cents, attached as an exhibit to the declaration, appellee is demanding judgment therefor. This case was tried before the county judge without a jury, and judgment was rendered in favor of appellee for the amount found to be due on the note, with interest and attorney's fees. Appellant appealed from this judgment to the circuit court, where the case was again affirmed; and from the judgment of the latter court, appellant appeals.

In the county court, appellant, Mrs. Harrison, filed, among other pleas, one of *non est factum,* sworn to; and the case was tried upon the issue of whether or not the note was executed by the appellant.

The evidence for the appellant is to the effect that early in the year 1926, Benjamin Harrison was living in the home of Mrs. Anna T. List, appellant; that while she was away on a visit, Harrison began extensive improvements on her residence, giving an order to the appellee, the Eagle Lumber & Supply Company, for material for such improvements. In April of that year, Mrs. List and Harrison were married. During the progress of the work of repairing and improving her dwelling, appellant signed dray tickets for the receipt of lumber delivered by appellee to her residence. She also took some part in the supervision and direction of the work done on her house. In October, Harrison, being pressed for payment of his account with appellee, asked the agent of the appellee to permit him and his wife to execute a note for the balance due, to which request the agent of the appellee assented. The note was prepared in the appellee's office, and Harrison signed it in the presence of appellee's agent, remarking that he would take it home for his wife's signature and return it. On the following morning, he returned the note with what purported to be the signature of the appellant thereon.

Before the note was executed, the evidence for appellee showed that appellant, Mrs. Harrison, went to the office of the appellee to check over the order given by Harrison, and found same correct. The evidence also showed that after the execution of the note, and on its due date, O'Bryan, manager of the Eagle Lumber & Supply Company, called on Mrs. Harrison relative to the note; and he testified that she told him that Mr. Harrison was away and would return with several thousand dollars, and that when he came back she would see that the account was paid. O'Bryan further testified: "I talked to her a. while and just before I left I asked her if when he came back, he didn't have the money, would she tell him about it and would they come down and see about fixing up the papers again. She said 'Yes.'"

Russell, a witness for the appellee, testified as to admissions made by appellant regarding certain signatures on some notes which he and his wife had executed in appellant's favor, and which apparently had been indorsed by the appellant. He also testified, in detail, as to appellant's signature on the map or plat of some property known as "Hiawatha on the Bay," stating that he and his wife were interested in this property, and were to meet Harrison and appellant at the clerk's office, where she would sign same in order that it might be recorded. Upon going to the clerk's office and finding that Mrs. Harrison had not been there to sign the plat, he and his wife left and walked to the post office; that upon returning to the courthouse they met Harrison and appellant, and upon inquiring of them whether they had signed the plat, both stated that they had; that he and his wife then went to the clerk's office, where she signed the plat and saw what purported to be the signature of the appellant thereon. As to the signature on the plat, the clerk stated that a lady came in and signed her name to it, but that he did not know that she was Mrs. Harrison, the appellant. While Russell was detailing his conversation with Mrs. Harrison, with reference to the building and her supervision thereof, an objection was interposed in the following language: "Counsel for defendant objects and moves to exclude the testimony because it is incompetent, irrelevant and immaterial to the issues under consideration. Objection overruled. Counsel excepts." The evidence immediately preceding this objection had no reference to the exhibits.

The appellant denied liability on the note or on the account which was the basis of the note; denied any sort of ratification of Harrison's act in creating the debt; denied any agency on the part of Harrison for her; and, in effect, said that Harrison, her husband, had forged her name to the note in controversy.

Many of the exhibits offered with the genuine writings of appellant thereon in the lower court, for the purpose of comparing them with the disputed writing, are not included in this record. The dray tickets, which appellant admitted signing, and some of the disputed signatures, are in the record; but the plat of the property of "Hiawatha on the Bay," and other exhibits introduced in the lower court, are not in the record here.

There are three assignments of error:

1. "The court erred in permitting the disputed note herein sued on to be introduced in evidence because the execution of same had not been established by appellee as the burden of procedure and proof, resting upon them, required."

It is sufficient to say that it is in the discretion of the trial court to control the order of proof. The trial was had before the judge without a jury; and while only slight evidence of the authenticity of the disputed writing is required; yet there must be evidence tending to show the execution of the instrument before the disputed document is competent. But in this case, subsequently, there was evidence by comparison of signatures and admissions of the appellant which rendered the note competent if the evidence is hereafter found to be sufficient to sustain the judgment of the lower court.

2. "The court erred in overruling objection and motion to exclude made by appellant's counsel to testimony of appellee's witness, Lee M. Russell and exhibits thereto, objection and motion to exclude shown at page 89 of the record; and in holding that the disputed signature of appellant on other instruments was competent evidence to prove disputed signature of appellant on note herein sued on." The objection cannot be sustained in the state of this record.

There was not the slightest objection to the introduction of the exhibits afterwards disputed by the appellant,

and this objection was not directed to the exhibits. On the contrary, it appears that the most important exhibit disputed, the plat of "Hiawatha on the Bay," went in by agreement of counsel; consequently there is no merit in this assignment of error in the state of this record.

3. "The court erred in finding for the appellee in amount of eight hundred thirty-five and seventy-six hundredths dollars, or in any amount, and in holding that the facts and evidence in the case warranted judgment against appellant on the note herein sued on."

Appellant's position is to the effect that no witness made a comparison of the disputed signature on the note with the admittedly genuine signatures which were permitted to go to the jury for comparison. We have seen, without objection, that irrelevant writings were permitted to go into this record by the trial judge, for the comparison of the signatures thereon with the disputed writing, and such writings were not a part of this case originally, but were signatures of the appellant's affixed to a plat, notes, and various contracts. No expert witness undertook to say that the signature in question, in his opinion, was the genuine signature of the appellant; and the question sharply presented is: May irrelevant papers be offered in evidence as competent proof on the trial of this issue, where the question involved is the genuineness of the signature?

There is much difference of opinion on this question. Many states have enacted statutes permitting the introduction of irrelevant papers with signatures attached, for the purpose of comparing them with the signature in dispute. Our state has no such statute. In English practice, comparison of the disputed writing with genuine written instruments was limited to relevant papers containing the signature which was properly a part of the record. In the case of *Wilson* v. *Beauchamp*, 50 Miss. 24, our court, recognizing the English rule, extended the common law, and held as follows: "And while compari-

son of handwriting by the jury is restricted in the English practice to writings put into the case for other purposes, it is allowed in the American states to put in the genuine signatures written before the controversy arose, for the mere purpose of enabling the jury to judge by comparison.'' In the same opinion, the court called attention to Mr. Greenleaf's statement ''that there is nothing the the whole range of the law of evidence more unreliable, or where courts and juries are more liable to be imposed upon.''

As sustaining this view, we cite *Moye* v. *Herndon*, 30 Miss. 110; also see *Coleman* v. *Adair*, 75 Miss. 660, 23 So. 369. In 22 C. J., p. 776, we find this statement: ''Even irrelevant writings offered in evidence merely for the purpose of comparison by a witness with the disputed writing have been received in a number of cases.'' See note 28. Also see 3 Jones, Commentaries on Evidence (2 Ed.), section 1296. In England it is now held that comparison of disputed writing may be either by witnesses or without the intervention of witnesses, by jury themselves, since the enactment of statutes to the effect that comparison of a disputed handwriting with any writing proved to the satisfaction of the judge to be genuine, is permitted to be made by witnesses. See, Jones, Commentaries on Evidence (2 Ed.), section 1290, p. 2368.

We conclude that writings shown to be genuine are admissible in evidence for the purpose of comparison with a disputed writing, either by witnesses on the stand or by the jury, without the intervention of witnesses.

On this view the evidence was sufficient to sustain the judgment, and we do not feel that the lower court was manifestly wrong.

*Affirmed.*