## Keyes v. State.

(Division A. May 29, 1933.)

[148 So. 361. No. 30624.]

J. P. and A. K. Edwards, of Mendenhall, for appellant.

**Herbert Nunnery**, Assistant Attorney-General, for the state.

**McGowen, J.,** delivered the opinion of the court.

The appellant, Jeffie Keyes, was indicted for uttering a United States government note, which purported to be a ten dollar bill which had been raised or altered. On the trial the appellant was convicted and sentenced to serve three years in the penitentiary.

' The only assignment of error is the refusal by the court to grant the peremptory instruction requested by the appellant on the ground that the evidence failed to show that the appellant had any knowledge of any defect in the ten dollar bill passed by him to Weathersby.

The essential facts are these: In the latter part of May, 1932, on Saturday night, there was a crowd assembled at a cafe operated by Effie Smith, a sister of the appellant. About twelve o'clock that night Keyes called at Weathersby's door and requested that he change a ten dollar bill. Weathersby did not have the money, and called on his wife, who was in an adjoining room in bed, and she told him that she had two five dollar bills in her purse in the chifforobe drawer. Weathersby got a light, secured the two five dollar bills, handed them to Keyes, who, in turn, handed Weathersby a ten dollar bill which Weathersby did not observe closely. His wife was a school teacher, and had kept this money for a special

purpose. Weathersby put the ten dollar bill in the purse, and nothing more occurred about it until November, 1932, when he again borrowed ten dollars from his wife to pay his debt to a boy, a war veteran, "who had no sense." Weathersby gave this boy ten dollars one night, and on the following day the bill given him by Weathersby was passed by the boy on a local merchant at D'Lo, and was alleged to be a forgery, or a raised bill. Weathersby thereupon went to the merchant and redeemed the bill.

The bill was offered in evidence, and the witnesses testified that the forgery was perceptible, for the reason that "$10.00" had been written or printed over "$5.00" in the corners of the bill, and they further said that it was a raised bill, because a five dollar bill issued by the United States government has a picture of Lincoln thereon, while a ten dollar bill has a picture of Hamilton, and that the bill in evidence, while purporting to be a ten dollar bill, had a picture of Lincoln thereon.

Weathersby called on Jeffie Keyes to make good, as he, (Weathersby) had done, in company with the sheriff. The appellant denied that this was the same ten dollar bill that he had delivered to Weathersby. The testimony of Weathersby's wife was corroborative of her husband's, except she said she had put this bill in the hem of her garment on the following day, and had kept it until November, 1932, when she loaned it to her husband for the war veteran.

The sheriff of the county was introduced and testified that he went with Weathersby to see the appellant, Keyes, and called on the appellant to make good, as Weathersby had done; that the appellant declined to do this; denied that the ten dollar raised bill was the same bill delivered by him to Weathersby, and refused to make any effort to find who had passed the raised bill.

It will be observed that the boy, the World War

veteran, who had been given a ten dollar bill by Weathersby, was not introduced as a witness, nor was the merchant to whom the boy delivered the bill offered as a witness.

Weathersby and his wife positively identified the bill offered in evidence as being the one received by Weathersby from Keyes, although they gave no reason for being able to identify the bill. They did not, during the intervening months between June 1st and November 1st, discover anything unusual or irregular about the bill.

The appellant, Keyes, offered himself and his sister, as witnesses, and his sister testified that she operates a cafe on the Dixie Highway, and on this Saturday night she had quite a number of customers, and a negro, whom she described, but whose name was unknown to her, bought a lunch for twenty-five cents and handed her a ten dollar bill to pay therefor; that she roused from slumber the appellant, Keyes, and asked him to go and get some change for her; that she gave him the ten dollar bill which Weathersby changed with two five dollar bills, and these bills appellant brought back to her, whereupon she gave the customer nine dollar and seventy-five cents, retaining one of the five dollar bills her brother had brought, and paying the other to the customer.

The appellant, Keyes, testified that he did not see his sister receive the ten dollar bill from the customer, but on his return, after securing the two five dollar bills, in change, from Weathersby, which he delivered to his sister, he saw her hand to the customer nine dollars and seventy-five cents in change. He said, on the witness stand, that the bill introduced in evidence was an older bill than the one he delivered to Weathersby, and he declined to make good the ten dollars for that reason. Keyes and his sister both testified that they did not know the man who gave the ten dollar bill to Effie Smith, Keyes' sister, to pay for his lunch. Effie Smith had seen

the customer before this occasion, but had not seen him since. The accused, Keyes, knew nothing about him.

Leaving out of view the failure of the state to introduce the war veteran or the merchant to whom the veteran gave the ten dollar bill, we are of the opinion that the evidence wholly fails to show that Keyes passed the forged bill to Weathersby with knowledge of the forgery. Section 949, Code 1930, requires that the offender shall knowingly pass the forged instrument, bill, or coin. On a trial under this statute, it is necessary to prove knowledge on the part of the accused. 26 C. J. p. 947, sec. 144.

This evidence may, of course, be supplied by circumstances as well as by positive proof, and the usual rule is that it is proven by circumstances. It is usually proven by showing that the accused had in his possession other bills of like tenor which were forged, or that he had represented himself to be the payee named in the forged instrument, when, in truth and in fact, he was not the actual payee.

But it might be urged that the recent possession of, and passing as true, a forged instrument, makes out a prima facie case from which, as a fair inference of fact, the jury might impute knowledge to the accused of the forged character of the instrument. He would then be called on to give a reasonable explanation of his possession.

We do not decide, or even intimate, that the law is that possession of a forged instrument and uttering same makes out a prima facie case for the state; but, conceding that rule in this case, the appellant, Keyes, has given a fair and natural explanation of his possession, which is entirely consistent with his want of guilty knowledge. He obtained the bill from his sister. She, in turn, gives a reasonable, fair, and natural explanation of her receipt of the bill from a customer. There was no sort of contradition of this explanation. The jury was not war-

ranted in rejecting it, as it must have done to render a verdict of guilty in this case. There was no conflict, in this behalf, for the jury to pass upon. Effie Smith and Keyes received the bill in the ordinary course of business. They were called on five months later to make good the bill. A normal person would seriously doubt the sufficiency of the identification thereof by Weathersby.

Under all the facts in this case, it is unreasonable to indulge the inference that the accused, Keyes, is guilty of uttering a forged instrument with knowledge of its falsity. The evidence is much stronger agaist Weathersby than it is against the accused.

We think the evidence establishes an entire want of guilty knowledge on the part of this appellant, Keyes.

Of course, if we should, in a proper case, hold that possession, as indicated above, does not establish a prima facie case of guilty knowledge, then there is no case whatever here. In either event, the appellant is entitled to be discharged.

Reversed, and appellant discharged.