COFER, Justice,
for the Court:
Appellants Alton Sanders and Jerry Thrasher were indicted in the Circuit Court of the Second Judicial District of Jones County on a charge of wilfully, feloniously, fraudulently and falsely uttering and publishing as true to Curtis Rogers and Roger Knight a certain forged and counterfeit writing — namely, a check which was made a part of the indictment. The purported check is in the amount of $231.37. They were tried on the indictment at the March, 1977, term of court and found guilty. Sanders and Thrasher were sentenced to serve fifteen and twelve years in the custody of the State Department of Corrections, respectively. Both defendants have appealed.
Of several assignments of error in the trial, they argue only two: First, that the court erred in overruling their demurrer to the indictment; and second, that the jury’s verdict was against the overwhelming weight of the evidence.
Noticing the attack on the insufficiency of the indictment, the indictment charges violation of Mississippi Code 1972 Annotated, Section 97-21-59, which provides:
Every person who shall be convicted of having uttered or published as true, and with intent to defraud, any forged, altered, or counterfeit instrument, or any counterfeit gold or silver coin, the forgery, altering, or counterfeiting of which is declared by the provisions of this chapter to be an offense, knowing such instrument or coin to be forged, altered, or counterfeited, shall suffer the punishment herein provided for forgery. ■
We upheld as sufficient an indictment in Sanders v. State, 219 So.2d 913 (Miss.1969), which was very similar to the one here that likewise contains all of the elements necessary to charge the offense.
The state adduced evidence that appellant Sanders, at about 7:30 p. m. on September 16, 1976, took the check, set out in the indictment and appearing in evidence, to Roger Knight, at the A & P Food Store in Laurel where Knight was employed and wanting to cash the check, handed it to Knight. Knight declined to cash it telling Sanders that it was an out-of-town counter check and that he could not cash it. The witness identified Sanders at the trial. Knight called Curtis Rogers, the co-manager of the store, at the insistence of Sanders that he contact someone in higher authority than Knight. Sanders represented to both Knight and Rogers that the check was good and legitimate. Rogers looked at the check and told Sanders he could not cash it because it was the company’s policy not to cash out-of-town checks. Sanders insisted that it was a good check, and on request produced as identification a Disabled American Veterans life membership card bearing the name of “Jones Massena F.,” the same name appearing on the check he was undertaking to cash. Rogers, however, declined to cash the check in spite of Sanders’ insistence.
Observing Sanders to be perturbed as he left the store, Rogers got into a vehicle and followed him to see where he was parked and what kind of car he was driving. He *945 noted Sanders’ vehicle to be a blue and white Buick or Cadillac with an Alabama tag. It was parked in the store parking lot. Another man who was in the driver’s seat got out of the car and went around to the passenger side. Then Sanders got into the driver’s seat and he and the passenger, whom the witness identified in the courtroom as appellant Thrasher, drove across the parking lot toward another store.
Report was made by Rogers to the Laurel Police Department to see if that department had anything on the Alabama tag. He also gave them information regarding Sanders’ effort to cash the check. This information was passed to officers on patrol duty, who later received another call telling them to go to an interstate highway intersection where a vehicle was parked to the side of one of the lanes with an occupant who was apparently female, and possibly dead. The car was found to be a white over blue Cadillac, with a Yazoo County, Mississippi, tag which was not securely fastened. The occupant was a man with blood-shot eyes, who, when asked to get out of the car and go to the back of it, was staggering, had slurred speech, and, according to the officers, smelled of intoxicating beverages. They asked for identification, and he produced a veterans’ identification card with the name “Massena F. Jones” on it. The man also produced an application for renewal of Alabama driver’s license, made out in the name of “Massena F. Jones,” with that same name appearing in writing on the signature line of the card. He did not have a drivers’ license.
He was put under arrest for public drunkenness, and the tag was by teletype found to have been issued to appellant Thrasher’s wife. Sanders said appellant Thrasher had gone to get some gasoline. Thrasher presently returned with gasoline and identified himself to the officer as Mr. Thrasher, whereupon the officers told him Sanders was under arrest, told him about the A & P incident, and asked him if he would go with them to the police department. He said that he would. One officer drove the Thrasher vehicle and Sanders and Thrasher were driven in the patrol car, during which journey Sanders “stuffed” something behind himself on his right side which later proved to be a check and some torn-up papers. In an interview with Captain Segrest of the Laurel Police Department, Sanders told him that his name was Sanders rather than “Massena F. Jones.”
Approximately one hour elapsed between the time the information to the officer as to the A & P incident, and that concerning the vehicle parked at the intersection of the interstate highway were received.
Officer Little did not know upon looking at the check, whether it was real, or a forgery, or fictitious. Furthermore, he did not know who Massena Jones was, and admitted that he might be in Laurel or Hat-tiesburg or elsewhere, as far as he knew.
Thrasher told the officers he was Donald Thrasher and that the car belonged to his wife.
Officer Hill did not know who Massena Jones was, or whether there was such a person. He could not say by looking at the check whether it was genuine, or false, or fictitious.
Frank Simpson, Jr., vice-president of the bank, testifying as to the names appearing on the check, stated that there was no such account in his bank, and that there never had been.
He knew of a man named Massena Jones and had heard of him, but did not know if he knew him. He said that the check was false and there was not to his knowledge an account by “Trans-Delta” whose stamp appears at the right bottom of the face of the check.
The check is signed by Abraham Gass or Goss, and such person had no account in the bank.
In Keyes v. State, 166 Miss. 316, 148 So. 361 (1933), we had before us a ten dollar bill which had been “raised” and a person accused of passing it in violation of the statute here [then Section 949, Code of 1930]. In it, citing 26 C.J., page 947, Section 144, we said:
*946 On a trial under this statute, it is necessary to prove knowledge on the part of the accused.
This evidence may, of course, be supplied by circumstances as well as by positive proof, and the usual rule is that it is proven by circumstances. It is usually proven by showing that the accused had in his possession other bills of like tenor which were forged, or that he had represented himself to be the payee named in the forged instrument, when, in truth and in fact, he was not the actual payee. (Emphasis added). (166 Miss. at 321, 148 So. at 362).
While appellant Sanders was the active person in confronting the A & P operators, the record amply shows the criminal participation of appellant Thrasher in the commission of the crime charged.
The indictment sufficiently charges the offense of uttering the check, and from the uncontradicted proof, the jury was well warranted in finding that both appellants were guilty as charged, and we find no error in its doing so.
The case is, therefore, affirmed.
AFFIRMED.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.