387 So.2d 751 (1980)
Tommy M. SAIK
v.
STATE of Mississippi.
No. 52079.
Supreme Court of Mississippi.
September 10, 1980.
*752 Gerald Hosemann, Vicksburg, for appellant.
Bill Allain, Atty. Gen. by Wayne Snuggs, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and BROOM and LEE, JJ.
LEE, Justice, for the Court:
Tommy Saik was convicted in the Circuit Court of Warren County for attempting to obtain possession of a controlled substance by reason of a forged medical prescription and was sentenced to serve a term of three (3) years in the Mississippi State Penitentiary with two (2) years suspended. He has appealed and assigns two (2) errors in the trial below.

I.
Appellant first contends that the court erred in refusing to grant his requested peremptory instruction of not guilty.
Evidence for the State indicated that appellant and his wife, Mary Louise Saik, lived in Jackson. On May 25, 1979, they went to Vicksburg, with appellant driving the automobile, and stopped at Super G Discount Drugs. Mrs. Saik entered the drugstore while appellant remained in the car. She presented a counterfeit prescription to Nancy Fuller, a clerk, for Talwin tablets (pentazozine), a controlled substance, and requested that the prescription be filled. The prescription purported to be from Jackson Mental Health Center, signed by R.J. Thomas, M.D. for Mrs. Billy Wade, patient. Mrs. Fuller delivered the prescription to pharmacist Glenn Russell to be filled.
*753 Russell was able to determine that the prescription was counterfeit, and, while Mrs. Saik was talking to the female clerk, he telephoned the police department. For the purpose of delay, Russell asked Mrs. Saik whether Dr. Thomas was still in his office and stated that he needed to contact Dr. Thomas about the prescription. When that statement was made to her, Mrs. Saik left the store, got back into the automobile, and appellant drove off. Russell was able to get a description of the automobile and the tag number, and gave them to the police, along with a description of Mrs. Saik.
A short while later, appellant and his wife were arrested by Vicksburg police and were taken to the police department. Upon searching appellant, his billfold was found to contain another prescription from Jackson Mental Health Center with the patient name of Mr. Bob Wilson and for the same amount of Talwin. The doctor's name appearing on the prescription was R. Jones, and the handwriting compared favorably with that of the first prescription presented at Super G Discount Drugs.
Detective Phil Solomon of the Vicksburg Police Department advised appellant of his constitutional rights and testified that appellant made the following free and voluntary oral statement to him:
"A. Yes, sir, I did. Mr. Saik informed me that he and his wife had gotten this prescription, the one attempted to be passed at the Super G Drug Store and also the prescription he had in his possession, from some friends in Jackson-which he declined to name-and had come together in a car to Vicksburg. And he was driving, and he let her out at the Super G Drug Store, knowing that she was going in to attempt to pass this prescription. He waited for her on the outside to return hopefully, apparently, with the pills. And then she returned without it, without the pills and they drove off, and he was driving.
Q. He was driving?
A. Yes, sir.
Q. Did he make any statement with reference to the alleged prescription found in his possession?
A. He said they got both prescriptions from the same friend at the same time in Jackson. And they came together, he and his wife, to Vicksburg to pass the prescriptions.
Q. They came from Jackson to Vicksburg for what purpose?
A. To pass these prescriptions for the Talwin tablets."
In deciding the question of whether or not the trial court should have granted a requested peremptory instruction, this Court considers all evidence favorable to the State, together with reasonable inferences flowing therefrom, and, if such evidence is sufficient to present a guilt question for the jury, the peremptory instruction should be refused. Roberts v. State, 379 So.2d 514 (Miss. 1979); Minor v. State, 379 So.2d 495 (Miss. 1979); Warn v. State, 349 So.2d 1055 (Miss. 1977).
There was strong evidence for the State that appellant and his wife left Jackson for Vicksburg with the common design and intent to obtain Talwin by passing counterfeit medical prescriptions, that appellant drove to the Super G drugstore for that purpose, and that the plan was thwarted when the pharmacist called the police. Appellant was present, aiding and abetting in the attempt to obtain possession of a controlled substance, and the evidence amply supports the verdict of the jury.

II.
Appellant next contends that State's Exhibits # 2, # 3 and # 4 were improperly admitted into evidence.
The Exhibit # 2 was the counterfeit medical prescription which was taken from appellant's billfold a short time after his wife passed the counterfeit prescription at Super G drugstore. Evidence of other crimes is relevant and admissible to prove scienter, guilt, intent, motive, and a common *754 design, plan and scheme, or where another crime is part of the same transaction as the crime charged. Harrington v. State, 336 So.2d 721 (Miss. 1976); Thompson v. State, 309 So.2d 533 (Miss. 1975); Malley v. State, 271 So.2d 448 (Miss. 1973); Ellis v. State, 255 So.2d 325 (Miss. 1971); Pierce v. State, 213 So.2d 769 (Miss. 1968).
In Sanders v. State, 357 So.2d 943 (Miss. 1978), a prosecution for uttering a forged check, quoting from Keyes v. State, 166 Miss. 316, 148 So. 361 (1933), the Court said:
"On a trial under this statute, it is necessary to prove knowledge on the part of the accused.
This evidence may, of course, be supplied by circumstances as well as by positive proof, and the usual rule is that it is proven by circumstances. It is usually proven by showing that the accused had in his possession other bills of like tenor which were forged... ." 357 So.2d at 946.
Exhibits # 3 and # 4 were a recognizance bond and application for driver's license signed by appellant, and were introduced in evidence for the purpose of permitting the jury to compare the known handwriting of the appellant with the writing on the counterfeit prescriptions.
The Court said in Harrison v. Eagle Lumber & Supply Co., 152 Miss. 466, 119 So. 203 (1928):
"We conclude that writings shown to be genuine are admissible in evidence for the purpose of comparison with a disputed writing, either by witnesses on the stand or by the jury, without the intervention of witnesses." 152 Miss. at 475, 119 So. at 205.
See also Garvin v. State, 52 Miss. 207 (1876).
The lower court properly admitted Exhibits # 2, # 3 and # 4 into evidence, and there is no merit in the second assignment.
The judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.