465 So.2d 1043 (1985)
Elijah A. BELINO and Jerry Wayne Bridges
v.
STATE of Mississippi.
No. 54615.
Supreme Court of Mississippi.
March 6, 1985.
Rehearing Denied April 10, 1985.
Nicholas M. Haas, Bay St. Louis, for appellant.
Bill Allain, Atty. Gen. by Walter L. Turner, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
Elijah A. Belino and Jerry Wayne Bridges were convicted in the Circuit Court of Hancock County, Mississippi, Honorable Leslie B. Grant, presiding, on five (5) counts of armed robbery (Bridges was convicted on one count of simple assault). The jury fixed their sentences on the armed robbery convictions at life imprisonment on each count, the sentences to run concurrently. They have appealed to this Court and assign three (3) errors in the trial below.

I. THE VERDICT OF THE JURY IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
On June 11, 1979, Seymores Jewelry Store in Bay St. Louis, Mississippi, three of its employees, and two customers were robbed at gunpoint. Approximately sixty-eight thousand dollars ($68,000) was taken from the jewelry store and various sums were taken from the five individuals, including nine hundred fifty dollars ($950.00) from Cynthia Fricke, a customer.
Mary Bergeron and Mary Buccola owned Seymores Jewelry Store, and Rose Wuesthoff was employed by them. All worked in the store. Eulice Bergeron, husband of *1044 Mary Bergeron, operated a watch repair shop located in the rear of the store. Seymores Jewelry Store opened for business each day at 10 a.m. On the day of the robbery, Belino was seen outside the store peering in the windows before the doors were opened. Shortly thereafter, Belino and Bridges entered the store and began to look around at the merchandise. Inquiry was made about the purchase of a watch, and placing gifts on a lay-a-way plan. Finally, after shopping around in the store, the robbers each drew a pistol and told the women that this was a robbery. Bridges had learned Eulice Bergeron was in the repair shop. He went to the shop and struck Bergeron on the head from the rear, knocking him down.
Bergeron, Buccola and Wuesthoff were tied by the hands and feet with tape and were made to lie down on the floor near the counters. Marie Hart, a customer, entered the store and she was robbed, tied and required to lie on the floor. Shortly, Cynthia Fricke, another customer, entered the store. Her purse was taken, emptied and found to contain approximately $950.00. Likewise, she was tied and made to lie on the floor. The appellants then emptied watches and jewelry from the showcases into bags and left the store. Cynthia Fricke was able to free herself immediately and, accompanied by her children, who were outside, chased the robbers to an adjoining alley. She described their car as being brown with a hump in the middle of the trunk, and she took down a license plate number, which apparently was erroneous, because it could not be checked.
Marie Hart works in the Princess Dress Shop, located next door to Seymores Jewelry Store and in view of that store. On August 27, 1979, she saw the appellants enter the Princess Dress Shop with two female companions. She identified them as the robbers of Seymores Jewelry Store. The police were called, and they came to the shop and arrested appellants. Rose Wuesthoff was working at Seymores that day, and she saw Belino through the window and immediately recognized him as one of the robbers.
Belino and Bridges were in Seymores Jewelry Store on the day of the robbery approximately thirty (30) to thirty-five (35) minutes. During that time, they talked at length with Mary Bergeron, Mary Buccola, and Rose Wuesthoff, who had the opportunity to watch and observe them closely. They described the actions of the appellants, what they said and did. Marie Hart and Cynthia Fricke also had the opportunity to observe them closely, hear them talk and watch them operate. They all positively identified appellants as the robbers, and stated that they could not be mistaken in their identities.
Appellants relied upon alibis as their defenses. Belino claims that he was working during the time of the robbery, and friends testified that he was present at work that morning and at a birthday party during the afternoon. Bridges claims that he was asleep in bed with his live-in girl friend. His alibi was corroborated by a sister-in-law and friend. None of the stolen articles were recovered, the getaway automobile was not found, and the police were unable to lift any latent fingerprints which compared to those of appellants. As mentioned above, more than two months elapsed before the appellants were apprehended.
We have carefully considered the testimony of all the witnesses in this case, particularly the identification testimony, together with the facts surrounding the identification. We apply the established and recognized principle of law as restated in Carroll v. State, 396 So.2d 1033, 1035 (Miss. 1981):
In determining whether a peremptory instruction should be granted and whether the verdict is contrary to the overwhelming weight of the evidence, the Court is required to accept as true all the evidence favorable to the State, together with reasonable inferences arising therefrom, to disregard that evidence favorable to the defendant, and, if such evidence will support a verdict of guilty beyond reasonable doubt, the peremptory *1045 instruction should be refused. Bullock v. State, 391 So.2d 601 (Miss. 1980); Wright v. State, 387 So.2d 735 (Miss. 1980); Saik v. State, 387 So.2d 751 (Miss. 1980).
We are of the opinion that the facts here presented a guilt issue for the jury to decide, and we hold that the lower court correctly submitted that issue to the jury.
II. THE APPELLANTS WERE DENIED THEIR RIGHT OF TRIAL BY AN IMPARTIAL JURY AND GUARANTEED BY THE CONSTITUTION OF THE STATE OF MISSISSIPPI.
III. THE STATE PEREMPTORILY CHALLENGED THE ONLY BLACK JUROR THUS DENYING APPELLANTS OF THEIR RIGHT BY TRIAL BY IMPARTIAL JURY.
The original jury panel consisted of fifty-eight (58) persons, five (5) of whom were black. Only one (1) black person was called in the first fourteen (14) prospective jurors, and he was peremptorily challenged by the State. The appellants made several motions complaining about the absence of black jurors on the panel, contending that such absence constituted a ground for reversal. Such is not the law. No request was made for an evidentiary hearing, nor was there anything in the record to indicate a willful, systematic exclusion of black persons from juries. In Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the United States Supreme Court said:
We cannot hold that the striking of Negroes in a particular case is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause. To subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge. The challenge, pro tanto, would no longer be peremptory, each and every challenge being open to examination, either at the time of the challenge or at a hearing afterwards. The prosecutor's judgment underlying each challenge would be subject to scrutiny for reasonableness and sincerity. And a great many uses of the challenge would be banned.
In the light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it. Hence the motion to strike the trial jury was properly denied in this case.
380 U.S. at 221-222, 85 S.Ct. at 837, 13 L.Ed.2d at 773.
In Booker v. State, 449 So.2d 209 (Miss. 1984), a capital murder case, the Court considered the same question raised by the appellants here, and at page 222, referred to Swain v. Alabama, supra, and Mississippi cases involving the question. There, the Court rejected the position of appellants here. Likewise, we hold that in the case sub judice no reversible error was committed by the lower court in sustaining the peremptory challenge of the State, which resulted in an all-White jury.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.