KING *v.* KING *et al.*

(Division B. May 25, 1931. Suggestion of Error Overruled June 15, 1931.)

[134 So. 827. No. 29343.]

L. G. Fant, Sr. & Jr., of Holly Springs, for appellant.

**Holmes & Bowdre**, of Hernando, for appellee.

Smith & Smith, of Holly Springs, for appellee.

Smith & Smith, of Holly Springs, and Holmes &
Bowdre, of Hernando, for appellees.

**Ethridge, P. J.,** delivered the opinion of the court.

Kit King was complainant in the court below and presented a petition for the probate of a will alleged to have been made and executed by H. W. King, the father of Kit King, and attested by R. K. McCarley and H. W. Knox. This will reads as follows:

"November 18th, 1929.

"This my last Will and Testament.

"I, Bequeath to my Grand Son Noland King, one hundred & twenty acres of land Described as follows—40 acres, on S. 13. T. 2, R. 4. and 80-acres on S. 14. T. 2. R. 4.

"To my son Kit King all my real estates and personal estate money in banks, notes and Stocks—Except one half of the rents and Interest *after* Expenses are paid, which I bequeath to my daughter Evie King the balance of her life. I appoint Kit King Executor of this will without bond.

"H. W. KING.

"Witness:

"R. K. McCARLEY.

"H. W. KNOX.

"Filed Feb. 24, 1930, and recorded Will Book 2, page 100.

"J. T. WADE—Clerk

"By M. M. McALEXANDER D. C."

The will was presented originally to the chancery clerk, but the probation was intercepted by an order of the court, and issues were made up and directed before a final approval of the probation of the will by the clerk, which act of the clerk in vacation was never approved by the court. The issues made up were three: First, whether H. W. King in fact executed the will by signing

the same with two subscribing witnesses required by statute; second, whether the will, if executed, was procured by undue influence on the part of Kit King and others, in his behalf; third, whether H. W. King had the testamentary capacity to execute the will. At the conclusion of the evidence there was a peremptory instruction in favor of the proponent of the will on the issue as to undue influence and as to mental capacity, and the cause was submitted to the jury on testimony as to whether in fact H. W. King had signed the will.

It will be unnecessary and perhaps improper to set out the facts in detail as, for reasons to be hereafter pointed out, the judgment must be reversed and the cause remanded for a new trial.

The witnesses McCarley and Knox were produced by the proponent and testified to witnessing the will and the due execution thereof. There was much evidence impeaching the veracity of the witness McCarley, and evidence of statements made by him subsequent to the death of H. W. King, in which he stated that if there was a will he did not know of it. There is some evidence that the witness Knox made statements out of court contrary to his statements in court as to the presence of McCarley at the time he (Knox) signed the will as a subscribing witness, and also evidence of conversation in which he was present and which he heard immediately after the death of H. W. King and while the body was being prepared for burial, and at which time he never said anything about there being any will or having any knowledge thereof. Under ordinary circumstances a person having such knowledge would have declared the fact. The witness Knox testified that McCarley was present when the will was signed by him (Knox), but there was evidence to show that he had stated subsequent to the death of H. W. King that he signed some paper but did not know what it was and did not see the alleged testator sign such paper, and that McCarley was not present

when he signed such paper. Also there was evidence that he was indebted to Kit King, and evidence to show that McCarley was exceedingly hostile to Evie King although they were first cousins, and that he had stated to others subsequent to the death of Mr. H. W. King that he had tried to get H. W. King to make a will. It appears that the witness McCarley was very much displeased at a certain young man who kept company with Evie King, and who was supposed to be trying to marry her, and that this was displeasing both to McCarley and to H. W. King. Many hostile expressions were offered in evidence on the part of McCarley to Evie King and to this friend of hers. As stated above, there was much testimony to the effect that McCarley was an untruthful man in the opinion of his neighbors, and that he was unworthy of belief; his reputation for truth and veracity being bad. There was no evidence to support the character of the witness.

The contestants, among other evidence introduced to impeach the will, introduced a witness who was an attorney at law by profession and who had made some study of signatures and photography on the subject of questioned or disputed signatures and documents, and claimed to have made numerous experiments in reference to handwriting coming under his observation in his practice by photographically comparing and studying signatures, and had made experiments in the use of a pen in writing, various movements, pen lifts, and similar things, and had studied them under a microscope and by photography. The admission of this evidence is vigorously assailed, and a large part of the brief of the appellant is devoted to this subject. We have given careful attention to the witness' testimony as to his qualification and without going into detail, we think he sufficiently qualified for the court to admit his testimony. Of course, there are varying degrees of experts, some having greater skill and more experience than others

and some having been used as witnesses often, while others but seldom. The witness involved here had only testified as an expert at one case prior to his examination in this case, but every expert witness must have his first case in which he testifies; it does not depend on whether he has testified before or not, but upon the degree of knowledge and skill of the exceptional nature which he possesses. It is not necessary to introduce a definition of an "expert." Sufficient definition will be found in Words and Phrases under the title of "Expert." Usually it is sufficient if a witness possesses peculiar knowledge, wisdom, skill, or information regarding the subject-matter under consideration, which is acquired by study, investigation, observation, practice, or experience, and is not likely to be possessed by the ordinary layman or any inexperienced person or one who is incapable of understanding the subject without the aid or opinion of some person who possesses such knowledge or experience. Therefore we do not think that it was error for the court to admit the witness Locke as an expert, and his testimony in connection with the other evidence is sufficient to sustain the verdict of the jury, providing the jury from the evidence disbelieves the evidence produced by the subscribing witnesses to the will.

Under the facts in this record it was the function of the jury to decide whether the witnesses to the will had told the truth, and whether the will was signed by the alleged testator, H. W. King. The court did not therefore err in refusing the peremptory instruction for the proponent of the will upon the issue as to whether the will had been executed by H. W. King. Among the instructions given for the contestants of the will was the following: "The court instructs the jury for the contestants that it is the law in Mississippi that unless a last will and testament is wholly written in the proper handwriting of the maker thereof, that it shall be attested by two credible witnesses; and that the jury is

the sole judge of the weight of the evidence and the credibility of the witnesses; so that if you believe from the evidence in this case that the proponents have failed to prove to your satisfaction by a preponderance of the testimony that the will in this case was signed by two witnesses, either one of which is not a credible witness, then in that event it is your sworn duty to find for the contestants against the will.''

Inasmuch as there was no evidence whatever that McCarley and Knox, the subscribing witnesses, were incompetent to testify for any reason, this instruction is clearly not applicable to any issue bearing on their competency. This court has decided that the word ''credible'' in the statute providing for a will to be witnessed by two credible witnesses means the witnesses are competent witnesses to testify in court. Rucker v. Lambdin, 12 Smedes & M. 230; Swanzy v. Kolb, 94 Miss. 10, 46 So. 549, 136 Am. St. Rep. 568, 18 Ann. Cas. 1089. Therefore the instruction was not based upon any issue of fact involved in the case. There was no objection to McCarley or Knox testifying and no evidence of any kind whatever to show that they were incompetent to witness a will. Therefore the instruction was manifestly aimed at the trustworthiness or truthfulness as witnesses of the two alleged subscribing witnesses to the will, and the instruction in effect, so plain as to be unmistakable, informed the jury that if they believe by a preponderance of the testimony that either one of the subscribing witnesses was not worthy of belief or had been successfully impeached and was of an untruthful character, then as a matter of law the will was void, and the jury should find for the contestants. The word ''credible'' used in this instruction was thus used in the sense of its ordinary meaning as being worthy of belief, and was fatally erroneous. Under this instruction the jury were in effect told that if they believed either of the subscribing witnesses was unworthy of belief that the will was void

although the jury might in fact believe that H. W. King solemnly executed the will and had the said witnesses to sign the same in his presence with the intention of executing a will. The facts of the execution might, under this instruction, be testified to by any number of worthy and credible witnesses who had not signed the will but who might have been present and been fully familiar with the circumstances, and still the will would be void merely because one of the subscribing witnesses to the will was an untruthful person wholly unworthy of belief. This makes the validity of the will depend upon whether the witness or witnesses who signed it as such were men of truthful reputations or men of truthful character, rather than the fact that they were competent to testify in the court. It is true the jury is the judge of the credibility of witnesses in all cases where issues of fact are being tried, when there is a conflict in the evidence or when the witness has been impeached in any manner known to law. The jury, in the present case, may possibly have believed that Knox was a subscribing witness and that McCarley was a subscribing witness and that Knox was a truthful man and told the truth about it, while McCarley may in their opinion, in view of the attack made upon him, be regarded as a person unworthy of credit or belief and therefore not a credible witness; under the instruction, if they so believed, the will would be void although signed by King with the intention of executing a will and witnessed by both of the parties.

It is urged that this instruction was cured by one procured by the proponent of the will. This instruction relied upon to cure the error in the one just reviewed reads as follows: "The court instructs the jury for the proponent, Kit King, that the word credible in the Mississippi law requiring two credible witnesses to a will means competent witnesses, such persons as are not disqualified from testifying in courts of justice by mental

imbecility, crime, or interests, but that the jury is the sole judge of the credibility of the witnesses."

We do not think this instruction has the effect of curing the one given on behalf of the contestants. The concluding part of this last instruction refers to the jury as being the sole judge of the credibility of witnesses and does not descend to particulars so much as the one given for the contestants. It does not tell the jury that if the will was actually signed by King and witnessed by McCarley and Knox that they could not set aside the will merely because they believed McCarley to be untruthful or a person of bad reputation or not a credible witness. The instruction given for the contestants above is the only one that has come under the observation or been called to the attention of any of the judges of this division of the court. It is certainly unusual and palpably unsound and erroneous, and an erroneous instruction complete in itself is not cured by another announcing the exact contrary of the proposition; where one instruction is incomplete or may be supplemented by another, they are not deemed to be contradictory but one as modifying or supplementing another, but where an instruction is palpably erroneous on the hypothesis announced thereon it is not cured by another announcing exactly the opposite. It is true here the second instruction relied on to cure the one being criticized announced the law clearly as to what the law meant by credible witnesses as applied to the execution of a will, but it did not remove the vice of the one asked by the contestants. Under the one given the contestants, all that would be necessary to overthrow a will in any case is to prove before the jury that the witness was unworthy of belief in the estimation of his neighbors in the community where he lived, if the jury saw proper to disregard or accept such impeaching evidence, although the testator might have believed the witness perfectly worthy of belief and called him as a witness to his

will believing in his veracity and disagreeing with his neighbors as to his veracity, or perhaps in ignorance of his neighbors' opinions. The judgment must therefore be reversed for the giving of this instruction.

We do not take notice of the argument assigned for error by the attorney for the contestants, as this question may never arise in another trial of the case.

Reversed and remanded.