191 So.2d 123 (1966)
O.L. CLARK et ux.
v.
Mrs. Anna Jones LANSFORD et al.
No. 44101.
Supreme Court of Mississippi.
October 24, 1966.
*124 E.K. Windham, Thomas H. Comer, Booneville, for appellants.
Smith & Smith, Corinth, for appellees.
ETHRIDGE, Chief Justice:
In this questioned document case, the Chancery Court of Prentiss County held the deed in question to be a forgery. It concluded that the testimony of the notarizing officer was indefinite and substantially impeached, and that of a handwriting expert was the only credible evidence. We conclude that the decree should be affirmed.
Thomas D. Jones died on July 17, 1961, at the age of 73 years, without having married. He had a long terminal illness. His will was probated in the Chancery Court of Alcorn County. Hugh B. Jones, his nephew with whom he had a confidential relationship, was appointed executor without bond. The will divided the estate into ten parts, devising one-tenth each to a brother, a sister, certain nieces and nephews, and trustees for an educational fund. One-tenth each was given to a niece, Mrs. Mary Anna Jones Lansford, and a nephew, John Edwin Jones. They are complainants, appellees here.
On August 18, 1961, a month after Jones' death, the defendant-appellant, O.L. Clark, filed with the Chancery Clerk of Prentiss County an instrument dated June 14, 1961, and purporting to be a deed executed by Thomas D. Jones to O.L. Clark. It was a conveyance of a farm worth $44,000, with a $13,000 lien on it, and containing 691.75 acres.
Mrs. Lansford and John Edwin Jones charged in their original bill of complaint, filed on February 25, 1964, that there was no delivery of the deed. They further charged the existence of a confidential relationship between Clark and Jones and the exercise of undue influence by Clark. After that, the estate's executor, Hugh B. Jones, a nephew, was removed by the Chancery Court of Alcorn County for malfeasance in office. Thereafter complainants amended their bill to charge forgery alone. Wilbanks, the newly appointed administrator with the will of Jones annexed, intervened as a party complainant. The chancery court held the deed of June 14, 1961, from Jones to Clark, was forged, and cancelled it.
The decree is not contrary to the overwhelming weight of the evidence. It is supported by substantial evidence, and certainly we cannot say the trial court was manifestly wrong. A handwriting expert testified in considerable detail with reference to the signature on the deed in question. He compared it with known, standard writings of Jones, including those made on the date he is asserted to have executed the deed. Comparing these known writings with the questioned signature, and considering the established habits of the writer, pen lifts, retouchings, and other characteristics of the standard and questioned signatures, he concluded positively that the signature on the deed was a forgery.
Hershel King, the notary public who signed the acknowledgment, had no independent recollection of this act. His testimony was contradicted in material particulars by his evidence given at the prior *125 hearing of the proceeding to remove the executor. He was substantially impeached, so the chancellor was justified in concluding that King "was not very certain about the facts, and his answers to the questions are not entitled to a great deal of weight. * * *"
Clark did not claim that he saw the deed executed. No one did. Nor was there any evidence of who typed it, or when it was done. Clark said that Jones gave it to him after execution and acknowledgment. He paid no consideration for the conveyance of a substantial amount of property. There were material inconsistencies between his testimony at the prior hearing for removal of the executor and the present trial. It is not necessary to enumerate these inconsistencies, but the chancellor was amply warranted in finding that because of them and the "manner" of his responses to questions, he could not give credence to Clark. The deed in question was a lengthy one with two pages of property descriptions. The date of June 14, 1961, was typed, yet neither Clark nor any other witness indicated when Jones had the time or opportunity on June 14 to get such a deed prepared.
The testimony of a handwriting expert that a signature is not genuine, supported by circumstances of probative value, is sufficient to overcome the impeached testimony of a notarizing officer to the questioned document. If corroborated by other facts or circumstances, the testimony of a handwriting analyst, tending to show the signature on an instrument to be forged, is sufficient to overcome that of a notarizing officer, who, as here, was substantially impeached and who had no independent recollection of the transaction. Estate of Maud Young, 347 Pa. 457, 32 A.2d 901, 154 A.L.R. 643 (1943); 154 A.L.R. 649 (1945); Nichols v. Sauls' Estate, 250 Miss. 307, 165 So.2d 352 (1964).
This rule was recognized and applied in King v. King, 161 Miss. 51, 134 So. 827 (1931), where the jury found that the alleged testator had not signed the will. The two attesting witnesses were substantially impeached. Contestants offered the testimony of a handwriting expert who concluded that the signature was a forgery. King held that such expert's testimony, together with other evidence, including that impeaching the subscribing witnesses, was sufficient to sustain the verdict of the jury. However, the case was reversed because of an erroneous instruction.
Moreover, the weight and conclusiveness of testimony by a handwriting expert depends upon the character, capacity, skill, and opportunities for observation of the expert, and the cogency of the reasons given by him for his opinion. This is essentially a question for the trier of facts. In re Rumley's Estate, 234 Miss. 490, 106 So.2d 678 (1958); Coleman v. Adair, 75 Miss. 660, 23 So. 369 (1898); Moye v. Herndon, 30 Miss. 110 (1855); see also Note, Authentication of Disputed Writings by Comparison: The Expert Witness, 104 U. Pa.L.Rev. 664 (1956); Mathyer, The Expert Examination of Signatures, 52 J. Crim.L., C. & P.S. 122 (1961); Naftali, Behavior Factors in Handwriting Identification, 56 J.Crim.L., C. & P.S. 528 (1965); Hilton, A Further Look at Writing Standards, 56 J.Crim.L., C. & P.S. 382 (1965).
The court did not err in permitting complainants to impeach King, the notary public, whom they called as a witness. Ordinarily a party cannot impeach his own witness, since he vouches for his credibility. But the reason for this rule has no application where the calling of the witness is not voluntary. Accordingly, the party may impeach a witness whom he is compelled to call, or whom by legal intendment he cannot avoid calling, as in the case of an attesting or subscribing witness to a deed or a will, or a notarizing officer to a deed, as here. Hence, the witness whom a party is compelled by law to call is not generally regarded as his witness, within the rule which prohibits one from impeaching his own witness. The compelled *126 witness may be impeached in the same manner as any other. Little v. Sugg, 243 Ala. 196, 8 So.2d 866 (1942); Griffith, Miss. Chancery Practice, § 577 (2d ed. 1950); 58 Am.Jur., Witnesses, § 795 (1948); 98 C.J.S. Witnesses § 477 (1957). The limit and extent of this type of examination is in the discretion of the trial court. Moreover, a witness may be impeached by the party calling him when he proves to be hostile, and when his testimony differs from that on a former hearing. Hall v. State, 250 Miss. 253, 165 So.2d 345 (1964). So there was no error in allowing complainants to cross-examine the notary public concerning prior inconsistent statements and his recollections of the acknowledgment.
Affirmed.
RODGERS, JONES, BRADY and SMITH, JJ., concur.