962 So.2d 737 (2007)
In the Matter of Adron ALLEN.
Betty Russell, Appellant
v.
James Bruce Allen, Robert Lee Allen, Ronda Nail, Fonda Kannada, Bradley Howard Allen and Cory Scott Allen, Appellees.
No. 2006-CA-00537-COA.
Court of Appeals of Mississippi.
August 14, 2007.
*739 Omar D. Craig, Oxford, attorney for appellant.
Carter C. Hitt, Oxford, Jerry P. "Jay" Hughes, for attorneys for appellees.
Before MYERS, P.J., CHANDLER and GRIFFIS, JJ.
CHANDLER, J., for the Court.
¶ 1. Betty Allen Russell appeals from the judgment of the Chancery Court of Lafayette County setting aside the conservatorship of Adron Allen and subsequent sales of his land. Russell argues that the chancellor erred in finding the conservatorship invalid, in setting aside two conveyances of Allen's property, and in ordering a full accounting of funds expended from Allen's estate.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Adron Allen was born on November 6, 1913. He married Lizzie Myrtle Brummett on April 28, 1934. The couple had two children, Bobby Lee Allen and Betty Allen Russell. Bobby passed away from cancer on May 31, 1991, leaving behind a wife and six children. Allen's wife, Lizzie, passed away the next year on March 8, 1992. Shortly following Lizzie's death, Russell admitted Allen to a nursing home in Jackson, Mississippi, and filed a petition for conservatorship on April 28, 1992 in the Lafayette County Chancery Court. Allen was served with a summons for the conservatorship, but no other relative of Allen's was given notice or served. Russell did not contact Bobby's widow or any of his six children despite the fact that she knew where most, if not all, of them lived.
¶ 4. The Chancery Court of Lafayette County appointed Russell conservatrix of *740 Allen on May 22, 1992. At the time of this appointment, Allen's real property assets consisted of two tracts of rolling hills in Lafayette County, Mississippi. One tract held 18.5 acres and the other 79 acres. Russell's attorney filed a first annual accounting of the assets, income and expenditures made on behalf of the ward on July 21, 1993. Copies of cancelled checks were included in the accounting. An amended accounting was filed on May 31, 1994, which appears to be a duplication of the first annual accounting, with the exception that the copies of the cancelled checks were not attached.
¶ 5. In 1994, Russell filed a petition with the chancery court to sell Allen's 18.5 acre tract to herself. Although her original attorney remained the attorney of record, Russell employed another attorney to handle the land sale. No summons or notice of the land sale was issued to any of Allen's relatives and the sale was not advertised. The chancery court authorized the sale of the property to Russell for the appraised value of $8,973. A few years later, Russell sold timber from the land for $14,000.
¶ 6. Russell filed a second amended accounting on January 19, 1995. It also appeared to be a duplication of the first annual accounting; yet again, no vouchers were attached as they had been to the first annual accounting. On January 24, 1995, the court entered a judgment approving the second amended accounting, which described the assets, inventory on hand, and income received during 1992 and 1993, and expenditures made through May of 1993.
¶ 7. Russell then filed second and third annual accountings, respectively. Both accountings were approved by the chancery court. In the third annual accounting, Russell also requested the court to dispense with future accountings due to Allen's assets totaling less than $3,000, with no prospect of future income. The chancery court agreed to dispense future accountings pursuant to Section 93-13-67 of the Mississippi Code Annotated (Rev. 2004).
¶ 8. In 1998, Russell filed another petition for authority to sell Allen's remaining tract of 79 acres to herself. Again, no summons or notice was issued to any of Allen's relatives and the sale was not advertised. Russell employed the same attorney who handled the first land sale approval. The court approved the sale of 79 acres to Russell for the appraised value of $17,816.
¶ 9. Allen died on June 5, 2003. Upon learning of the land sales only after Allen's death, his six grandchildren filed a petition to set aside the deeds on February 28, 2004. The petition sought to set aside the decrees authorizing and approving both land sales to Russell. The grandchildren argued that the deeds conveying the property were fraudulently procured without proper notice, which rendered the deeds invalid.
¶ 10. On April 4, 2005, the Lafayette County Chancery Court conducted a hearing to determine the validity of the subsequent land sales. While the hearing was conducted in the same court as the initial proceedings filed by Russell to establish the conservatorship and approve Allen's land sales, a different chancellor presided over these hearings. The new chancellor ordered that the conservatorship was invalid because the proper parties were not served with notice, as prescribed by statute. The court also set aside the two deeds conveying property from Allen's conservatorship estate to Russell because notice was not given to the required number of Allen's kin. The court noted that Russell, as conservatrix, was in a fiduciary relationship which required her to act in the ward's best interest and that she had "breached this trust." Thus, the title to *741 both properties was vested in Allen's estate. The $14,000 realized from the sale of timber on the 18.5 acre tract was also put back into Allen's estate.
¶ 11. The distribution of Allen's estate was to be completed in a separate matter. In order to determine the funds due to the estate, the chancellor ordered Russell to provide a full accounting covering all assets, liabilities, income, and expenditures, with supporting documentation, as well as a full inventory of Allen's personal property and assets for the period of May 22, 1992, through the date of Allen's death. In addition, the clerk of court was appointed to serve as an independent administratrix of Allen's estate. The chancellor noted that upon the future calculation of distribution of the estate's assets, Russell would be entitled to a credit for the property taxes paid on the real property from the time she acquired such tracts of land under the conservatorship.
¶ 12. Russell submitted to the court an inventory and accounting of the conservatorship, which included copies of cancelled checks Russell had written from Allen's bank account. A detailed inventory of Allen's furniture and personal property was not included, other than a general reference. The grandchildren objected to the inventory and accounting due to the lack of supporting invoices for the expenses, other than copies of cancelled checks. They also objected to the omission of supporting evidence for the sale of thirty head of Allen's cattle, which Russell sold for profit while her petition for the conservatorship was pending, and to the omission of evidence supporting the land and timber sales.
¶ 13. The chancery court heard live testimony from witnesses and received evidence for each side on the matter on November 1, 2005. At that time, the court granted an extension for discovery due to incomplete proof of expenditures Russell claimed, and a final hearing on the matter took place on February 27, 2006. During the final hearing, the court issued an order finding that Russell owed Allen's estate $30,032.29 because she failed to justify certain expenses she claimed were for Allen's benefit. However, Russell was entitled to offset that payment by $28,984.78 for the purchase of the two tracts of Allen's land and taxes paid on the land while it was in her possession. The net difference between the amounts Russell was ordered to pay the estate and the credits to which she was entitled was $1,047.51. Russell now appeals that judgment.

STANDARD OF REVIEW
¶ 14. This Court employs a limited standard of review on appeals from the chancery court. Miller v. Pannell, 815 So.2d 1117, 1119(¶ 9) (Miss.2002). Great deference is given to the chancellor in his findings of fact, and we will not disturb those findings unless they are found to be manifestly wrong or clearly erroneous, or where the chancellor applied an incorrect legal standard. In re Estate of Ladner, 909 So.2d 1051, 1054(¶ 6) (Miss.2004). In doing so, our job is to determine whether there was substantial, credible evidence supporting the chancellor's findings such that the decision was not manifestly wrong or clearly erroneous. In re Estate of Carter v. Shackelford, 912 So.2d 138, 143(¶ 18) (Miss.2005). We also recognize that because a chancellor is the only one to hear the testimony of witnesses and observe their demeanor, he or she is in the best position to evaluate a witness's credibility. Culbreath v. Johnson, 427 So.2d 705, 708 (Miss.1983).

LAW AND ANALYSIS
I. WHETHER THE CHANCELLOR ERRED IN SETTING ASIDE THE TWO CONVEYANCES.
¶ 15. Russell argues that the chancellor erred in setting aside the two *742 conveyances of real property made during the conservatorship. The lower court found the land transfers to be unlawful because interested parties were not served with notice for either the land sales or the establishment of the conservatorship.
¶ 16. Allen had two children, Betty Allen Russell and Bobby. Bobby predeceased Allen, leaving behind six children of his own. Russell admits that she did not join any of her brother's children in either her petition for conservatorship or the land transactions. However, she argues that she merely followed the advice and counsel of her attorney and was never told that she needed to join the other family members. Russell further argues that a statute of limitations to recover property sold by order of a chancery court applies. Section 15-1-37 of the Mississippi Code Annotated (Rev.2006) states in pertinent part:
Any action shall not be brought to recover any property (a) sold by an order of a chancery court, where the sale is in good faith and the purchase money paid, or (b) partited in kind or sold for partition where the purchase money is paid, unless such action is brought within two years after possession is taken by the purchaser under the sale of the property or by the taker under the decree of partition.
¶ 17. The court approved the sale of the first parcel of the ward's land in 1994, and approved the sale of the remaining acres of the ward's land in 1998. The petition to set aside these deeds was not filed until 2004, after Allen passed away. Without question, the petition to set aside the deeds falls outside of the statute of limitations. However, both the conservatorship and the subsequent land sales were correctly deemed invalid by the lower court because procedural requirements were not met. Accordingly, the statute of limitations does not apply.
¶ 18. Under Mississippi law, in order for a transfer of real property under a conservatorship to be valid, summons shall be issued in accordance with Section 93-13-281 of the Mississippi Code Annotated. Miss.Code Ann. § 93-13-51. Notice was not served upon the required number of kin for the establishment of Allen's conservatorship, as required by statute. Section 93-13-281 of the Mississippi Code Annotated states in pertinent part:
In all proceedings involving a ward and brought under Chapter 13, Title 93, Mississippi Code of 1972, except as hereinafter provided, the proceeding shall join as defendants the parents or parent of the ward then living, or if neither be living, two of his adult kin within the third degree computed according to the civil law.
¶ 19. A ward's property can be validly disposed of only in conformity with statutory provisions. Thompson Funeral Home v. Thompson, 249 Miss. 472, 478, 162 So.2d 874, 876 (1964). Therefore, a sale will be void if the record does not show that at least the statutory number of near relatives were summoned, if there be so many in the state. Temple v. Hammock, 52 Miss. 360, 366 (1876). The legislative intent behind this requirement is to apprise those relatives concerned for the ward's welfare, so that they may "protect the interest of their kinsman by appearing and objecting to the sale, and showing reasons against it." Id.
¶ 20. Russell admits that she did not serve any of Allen's relatives. Without complying with the notice requirement, the grandchildren could never have had any reason to know or object to the proceedings. We further note that the statute was intended to prevent a claimant from sleeping on enforcing his rights, not to *743 prevent a claimant from bringing suit for something of which he is not aware. Thus, there can be no application of the statute of limitations when the grandchildren were not aware that the sale had taken place and the decrees purportedly authorizing the conveyance of real property were not made in conformity with law. Accordingly, we affirm the lower court's decision to set aside the two land conveyances.
II. WHETHER THE COURT ERRED IN ORDERING A FULL ACCOUNTING.
¶ 21. Russell claims that the chancery court erred by ordering a full accounting of expenditures made during the conservatorship. She argues that annual accountings of Allen's estate had previously been approved by another chancellor and the order by the chancellor in the present case requiring additional accountings falls outside of the statute of limitations and is barred by res judicata. For this argument, Russell relies on Section 15-1-43 of the Mississippi Code Annotated, which states that:
All actions founded on any judgment or decree rendered by any court of record in this state, shall be brought within seven years next after the rendition of such judgment or decree, and not after, and an execution shall not issue on any judgment or decree after seven years from the date of the judgment or decree.
The chancery court approved the first annual accounting on January 24, 1995 and the second and third annual accountings on November 24, 1997. The grandchildren filed suit challenging the conservatorship on February 27, 2004, and the second chancery court ordered a complete accounting of the funds dispersed from Allen's estate on April 5, 2005. Russell states that, once the accountings were approved of and any later accountings ordered were dispensed with by the first chancellor, she had no need to preserve any documentation for the expenditures. Thus, it was impossible for her to comply with the court's order. We disagree with Russell's assessment of the case in this respect.
¶ 22. In an attempt to determine the status of the conservatorship account, the court required Russell to provide adequate information regarding the expenditures she claimed were made on behalf of Allen. Neither the statute of limitations nor res judicata apply to this order as it is not challenging the prior court's approval. Rather, the chancellor in the present case sought additional information to determine the status of Allen's holdings.
¶ 23. The chancery court was within its discretion to order a full accounting when it appeared that Russell's records for the conservatorship were incomplete. Such an order is consistent with a chancery court's duty to ensure that all proper evidence is admitted in order to give the litigants a fair trial. Bryan v. Holzer, 589 So.2d 648, 656 (Miss.1991).
¶ 24. Russell produced copies of certain cancelled checks made out to her person from Allen's account, which she claimed were used to purchase clothing and necessary items for Allen. However, Russell could not provide the court, as it requested, with any receipts, invoices, or additional information to support her assertion that the funds were used for Allen's benefit. Russell also claimed that she deposited the proceeds from the cattle sale into Allen's account, but she could not produce a deposit slip or demonstrate from Allen's bank account records that the money was actually deposited into his account. She argues that the bank did not preserve records of Allen's account beyond six years and, since this suit was filed after the period when the bank would have kept the *744 records, it was impossible to produce what the court required. We note here that Russell made several misstatements while on the stand regarding the amount of evidence she possessed. At one point, the chancellor considered holding her in contempt for perjury. The court, therefore, determined that it could not merely take Russell at her word that the money was used for Allen's benefit and ordered Russell to show proof that the checks and other items were actually used for her ward. Russell was unable to do so.
¶ 25. As conservatrix, Russell owed a fiduciary duty to Allen. Bryan, 589 So.2d at 658. Because a fiduciary owes such a duty to the ward, Mississippi law provides a chancellor with broad equitable powers to "hold a fiduciary fully accountable for the property with which the fiduciary has been entrusted." In re Estate of Carter, 912 So.2d at 147(¶ 29). A full accounting of such a conservatorship is an "important mechanism" and "an opportunity for an individual . . . to document and justify his/her lawful execution of the duties conferred upon him/her." Id. at 146(¶ 26). If an individual fails in her duties, "the chancery court may require an accounting . . . where there are charges of mismanagement or maladministration of the estate." Id.
¶ 26. Accordingly, there is no merit to Russell's assignment of error.
III. WHETHER THE COURT ERRED IN ORDERING RUSSELL TO PAY THE ADMINISTRATRIX CERTAIN FUNDS EXPENDED FROM THE WARD'S ESTATE.
¶ 27. The lower court ordered Russell to repay certain funds to Allen's estate, but offset those charges with certain credits. Russell contends that her testimony is sufficient to prove that she used the funds on Allen's behalf. The lower court noted that Russell contradicted herself on at least two occasions during the hearings and committed perjury. Thus, the chancellor required that Russell provide documentation to back up her claims that funds for which she sought reimbursement were actually used for Allen's benefit. We will address each payment Russell disputes separately.
A. Proceeds from the sale of Allen's cattle
¶ 28. The court ordered Russell to repay $9,107.59 to Allen's estate for the sale of cattle owned by Allen prior to the establishment of the conservatorship. Approximately thirty head of cattle were sold by Russell at Peoples Livestock in Houston, Mississippi, on May 9, 1992, for the sum of $9,107.59. This sale occurred while Russell's petition for conservatorship was pending before the court. Russell testified that she deposited the proceeds received from the cattle sale in either Allen's savings or checking account and that the proceeds from the sale were used for Allen's benefit. Russell claims that she told some of Allen's grandchildren about the cattle sales and accounted for the sale in her first annual accounting of the conservatorship. However, Russell admits that she does not have the deposit slip evidencing the deposit of the proceeds from the cattle sale into the conservatorship account. The lower court noted in its bench ruling that the check for $9,107.59 was made payable to Russell, and that Russell did not have an explanation for what happened to the money.
¶ 29. We have stated that the proof required of a conservator's actions is within a chancellor's discretion. In re Estate of Carter, 912 So.2d at 146(¶ 26). Russell could not provide additional proof, beyond her word, that the cattle proceeds were used on Allen's behalf. Because a chancellor *745 is the sole judge of a witness's credibility, we find that the chancellor's actions in the present case were neither manifestly wrong nor clearly erroneous. Culbreath, 427 So.2d at 708.
B. Checks from conservatorship account
¶ 30. The lower court assessed Russell with the sum of $390 for drawing three separate checks on the conservatorship account made payable to "cash," $100 for another check, and $200 for a check Russell claims she used to repair her mother's gravesite. However, Russell could not provide the additional evidence required by the chancellor to support these claims.
¶ 31. The chancellor noted that he did not accept Russell's explanation for these checks in part because she had perjured herself on the stand. We find no error in the chancellor's requirement of proof and subsequent order for Russell to repay these funds to Allen's estate.
C. Sale of timber
¶ 32. Believing that she had authority to do so under the conservatorship, Russell paid $8,973 for 18.5 acres of Allen's land in 1994. In 2000, Russell sold timber from that parcel for $14,000. Because the land sale was invalid, the court ordered Russell to pay the proceeds from the timber sale to the estate. Russell argues that she should not have to repay Allen's estate the $14,000, because she should not be held personally liable for mistakes her attorney and the original presiding judge made. We will discuss the alleged mistakes made by her original attorney and the first presiding judge below. However, we note here that, because the land sales failed the procedural requirement for notice, the sale was invalid. As such, Russell did not have legal title to the land and could not legally benefit from any profit made from that land. Accordingly, we can find no error with the chancellor's order.
D. CRP funds
¶ 33. After Russell purchased the 79 acres of land, she applied for and received payment from the U.S. government under the CRP Program. For planting pine seedlings in 21 of the 79 acres, Russell received $5,338.70. The chancellor ordered Russell to remit this payment back into the estate. Because the land sale was invalid, Russell was not authorized to apply for the CRP program and, therefore, should not keep any benefits incurred from that program. Russell claims that the CRP Program added value to the land. She also argues that she is being doubly penalized because her land was taken away from her and she must pay Allen's estate income she personally owned.
¶ 34. The land sale was invalid and any profits made from the land after that sale were correctly redistributed to Allen's estate. Accordingly, we find no error in the chancellor's decision.
IV. WHETHER THE COURT ERRED BY HOLDING RUSSELL LIABLE FOR ALLEGED MISTAKES MADE BY HER ATTORNEY.
¶ 35. Russell claims that she was improperly held liable for mistakes made by her original attorney and the original presiding chancellor. She argues that she relied solely on her former attorney's advice and did not knowingly commit any wrongdoing; yet, she is being personally and financially punished by the court.
¶ 36. As we noted above, this Court is charged with the responsibility of reviewing a chancellor's decisions under a limited standard of review. Miller, 815 So.2d at 1119. Because a chancellor is the sole judge of a witness's demeanor and credibility, great deference is given to the chancellor *746 in his findings of fact. Culbreath, 427 So.2d at 708. Accordingly, we will not disturb those findings unless they are found to be manifestly wrong or clearly erroneous, or where the chancellor applied an incorrect legal standard. In re Estate of Ladner, 909 So.2d at 1054(¶ 6).
¶ 37. Upon a thorough review of the record, it is clear that the chancellor sought an equitable result for the parties involved. The chancellor stated that he would not penalize Allen's heirs for any alleged mistakes made in other proceedings, and further noted that he did not want either party to pay or owe one penny more than what was required by law. The chancellor was very careful in making his assessment of the accountings for Allen's estate and the expenditures made therein. His decision does not contradict the evidence or testimony provided. Because we find there was credible evidence to support the chancellor's findings, we cannot assign error to his actions or say that he abused his discretion. Accordingly, we affirm the lower court's decisions.
¶ 38. THE JUDGMENT OF THE CHANCERY COURT OF LAFAYETTE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.