# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00027-COA

**HEATHER N. HACKLER**                                              **APPELLANT**

**v.**

**JOSHUA H. HACKLER**                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/18/2018 |
| TRIAL JUDGE: | HON. MICHAEL L. FONDREN |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WENDY MARTIN |
| ATTORNEY FOR APPELLEE: | MATTHEW STEPHEN LOTT |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 05/19/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., GREENLEE AND McCARTY, JJ.

### McCARTY, J., FOR THE COURT:

¶1.     Following Joshua and Heather Hackler's divorce, the Chancery Court of Jackson County, Mississippi, entered a final judgment regarding custody of their two children.  The court awarded custody of the couple's son to Joshua and custody of their daughter to Heather.

¶2.     Heather appeals, arguing that the chancery court should have awarded her custody of both children and that it failed to address the amount of child support owed for her daughter.

¶3.     We affirm the finding of custody, but we reverse and remand for a determination of the issue of child support for the daughter.

### FACTS

¶4.     Shortly after Joshua and Heather were married, Joshua adopted A.H., Heather's four-

year-old daughter from a prior relationship.[1]  Thereafter, the couple had a son together, F.H. The pair would eventually divorce and later marry other spouses with whom they had children.

¶5.     During their divorce proceedings, Heather and Joshua each requested to have custody of both children.  The chancery court temporarily awarded physical custody of A.H. to Heather, joint physical custody of F.H., and joint legal custody of both children.  Joshua was awarded visitation with A.H., which was limited only to visits by phone and video. He was not permitted any physical visitation.

¶6.     The chancery court later issued a supplementary order that awarded Joshua physical custody of F.H. and ordered him to pay $260 per month in child support for A.H.  After several months of nonpayment, Heather filed a motion for contempt against Joshua, seeking enforcement of the order and arrearages for the back-owed support.  The chancery court granted the motion and entered an order allowing income to be withheld from Joshua's wages to pay the court-ordered support.  Joshua filed a motion to suspend the income withholding order and was subsequently denied.

¶7.     Amidst the custody dispute, the chancery court appointed a guardian ad litem (GAL). The GAL initially found that it was in F.H.'s best interest to remain with Joshua.  It found that staying with Joshua would allow F.H. to continue to live in the family home located down the street from his paternal grandparents, with whom he had a close relationship.

---

[1] This Court declines to use the names of minor children to protect their privacy.

¶8. Throughout the proceedings, the GAL submitted two updated reports. In both reports she declined to recommend custody of F.H. to either parent over the other. The GAL explained that she had initially recommended an award of custody to Joshua so that F.H. could remain in the family home. However, Joshua had since remarried and moved. Therefore, the court's interest in allowing F.H. to remain in the family home was no longer a relevant consideration.

¶9. At the hearing, the GAL testified that she believed it would be in the children's best interest for Heather to receive physical custody of both F.H. and A.H. The GAL stated that she was concerned that Joshua's obsession with food was having similar adverse effects on both F.H. and A.H. She further vocalized her preference that the children's mother provide the primary childcare rather than the children's stepmother. The GAL also expressed a desire to keep the siblings together.

¶10. Ultimately, the chancery court conducted its own *Albright* analysis and issued a final ruling. The chancery court found that it was in the children's best interest for Heather to have custody of A.H. and for Joshua to have custody of F.H. Heather was ordered to pay child support to Joshua for F.H. However, the chancery court did not address the issue of child support in relation to A.H.

¶11. Heather filed a motion for reconsideration or, in the alternative, a new trial. The chancery court denied her motion. Heather timely perfected her appeal, asserting that the chancery court erred both in its decision awarding physical custody of F.H. to Joshua and in

3

its failure to address child support in relation to A.H.

## STANDARD OF REVIEW

¶12. "This Court will not disturb the findings of a [chancery court] when supported by substantial credible evidence unless the [chancery court] has abused [its] discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Forrest v. McCoy*, 941 So. 2d 889, 890 (¶7) (Miss. Ct. App. 2006).

## ANALYSIS

¶13. Heather asserts two assignments of error for us to consider. First, she alleges that the chancery court erred by awarding physical custody of F.H. to Joshua. Second, she argues that the chancery court erred by failing to address child support in relation to A.H.

### I. The chancery court did not err by awarding custody of F.H. to Joshua.

¶14. Heather contests the chancery court's custody award of F.H. to Joshua. Heather claims that the chancery court was required to provide written findings as to why it deviated from the GAL's recommendation, but failed to do so. She also disagrees with the chancery court's findings of fact in its *Albright* analysis.

### A. The chancery court provided written findings as to why it did not follow the GAL's recommendation.

¶15. The chancery court deviated from the GAL's recommendation and awarded custody of F.H. to Joshua. Heather argues that because the chancery court did not follow the GAL's recommendation, it was required to provide written findings explaining why it rejected the

4

recommendation. *J.P. v. S.V.B.*, 987 So. 2d 975, 982 (¶20) (Miss. 2008). Heather contends that the court's failure to do so constitutes error.

¶16. Despite Heather's argument, we find that the chancery court did explain its reason for rejecting the GAL's recommendation and reaching a different conclusion. In its final judgment, the chancery court held, "The continuity of care Joshua has had over [F.H.], [F.H.'s] school and community record, as well as Heather's concerning background of drug abuse, have convinced the Court that it is in [F.H.'s] best interest to remain with Joshua."

¶17. Because the chancery court explained its reason for deviating from the GAL's report, this argument does not require reversal.

### B. The chancery court did not err in the *Albright* analysis.

¶18. Heather takes issue with the chancery court's *Albright* analysis and application of its factors to the facts of this case.

¶19. "[T]he polestar consideration in any child custody matter is the best interest and welfare of the child." *Martin v. Martin*, 282 So. 3d 703, 708 (¶16) (Miss. Ct. App. 2019). "To determine the best interest of the child, Mississippi courts are guided by the factors set forth in *Albright*." *Id*. The *Albright* factors are as follows: (1) age, sex and health of the child; (2) which parent had the "continuity of care prior to the separation;" (3) parenting skills; (4) each parent's "willingness and capacity to provide primary child care;" (5) the parent's employment and its associated responsibilities; (6) physical and mental health and age of the parents; (7) "emotional ties of parent and child;" (8) "moral fitness of the parents;"

(9) the child's "home, school, and community record;" (10) "preference of the child at the age sufficient to express a preference by law;" (11) "the stability of the home environment and employment of each parent;" and (12) any other "factors relevant to the parent-child relationship." *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

¶20. Heather argues that the chancery court failed to make specific findings for each *Albright* factor and that the court did not thoroughly discuss its findings on the factors it did address. However, Heather does not specify which factors were omitted from the chancery court's *Albright* analysis. Upon our review of the record, the chancery court analyzed and discussed each of the *Albright* factors, including the separation of siblings under the "other factors" prong.

¶21. Heather also finds error with the chancery court's findings of fact during the *Albright* analysis. She argues that many of the factors which were either weighed in Joshua's favor or found to be neutral should have been found in her favor. We address each challenged factor in turn.

### i.    Continuity of Care

¶22. The chancery court found that the "continuity of care" factor slightly favored Joshua because he had temporary physical custody of F.H. for the two years preceding the final judgment. Heather argues that this factor should have weighed in her favor because she was the primary caretaker for F.H. prior to the separation.

¶23. "It is true that the original articulation of the *Albright* factors directed the chancery

6

court to consider the continuity of care prior to separation." *Edwards v. Edwards*, 189 So. 3d 1284, 1287 (¶11) (Miss. Ct. App. 2016). "But the Supreme Court has since held that care after separation must be considered as well." *Id*.

¶24. Because the chancery court considered continuity of care before and after the separation, we cannot say that the chancery court erred by finding that this factor weighed slightly in favor of Joshua.

### ii. Parenting Skills

¶25. Although the chancery court did find that the "parenting skills" factor favored Heather, she argues on appeal that this factor should have favored her "strongly . . . to the point of granting custody of both children to [her] as the polestar consideration."

¶26. Heather predicates her argument on Joshua's obsession with food and his treatment of A.H. Joshua would often call A.H. fat and berate her about her weight. He would do so despite the fact that A.H.'s struggle with weight was due to her diagnosis of Hashimoto's disease.

¶27. Joshua also told A.H. that she was possessed by demons and attempted to "exorcise" the demons by anointing his home with olive oil. Joshua even told the principal of F.H.'s school that A.H. was demon-possessed.

¶28. At the hearing, A.H. testified that on one occasion while playing with Joshua, she accidentally kneed him "into his private area." She stated that Joshua became so enraged that he "choked her to the point where she almost passed out."

7

¶29. The chancery court found that Joshua "displayed poor parenting skills with regard to [A.H.]." However, the chancery court also found that "[F.H.] is a healthy child who loves his father and enjoys living in his father's home."

¶30. On appeal in a child-custody case, this Court does not reweigh the *Albright* factors. *Sanders v. Sanders*, 281 So. 3d 1043, 1050 (¶21) (Miss. Ct. App. 2019). Rather, we review the evidence and testimony presented at trial to ensure the chancery court's ruling was supported by credible evidence. *Id.* The trial court already found this factor weighed in favor of Heather. There is substantial evidence to support this conclusion.

### iii. Employment and Associated responsibilities

¶31. The chancery court found that this factor favored neither party. Heather works as a respiratory therapist at Forrest General Hospital and Joshua works as a jointer at Ingalls Shipbuilding.

¶32. Heather argues that this factor should have favored her because her flexible work schedule allowed her to take the children to school and doctor's appointments. Joshua testified that his parents and new wife were available to assist him in caring for F.H. in the event his job required him to travel. No evidence was presented that Joshua's employment interfered with his ability to parent F.H.

¶33. This Court has previously affirmed a chancery court's finding that this factor was neutral when there was no evidence that a party's employment interfered with their duties as a parent, despite the other party's more flexible work schedule. *Harden v. Scarborough*, 240

8

So. 3d 1246, 1253 (¶19) (Miss. Ct. App. 2018).  Therefore, the chancery court did not err in finding this factor to favor neither party.

### iv.     Physical and Mental Health and Age of the Parents

¶34.    The court found that this factor slightly favored Joshua because of Heather's alleged past drug abuse.[2]  Joshua testified at the hearing that Heather had abused drugs in the past. Heather denied that she had ever used or abused drugs.  During the proceedings, the chancery court ordered Heather and Joshua to undergo drug screening on two separate occasions. Both screenings revealed that each of the parties tested negative for illicit drug use.

¶35.    The chancery court is "vested with the responsibility to hear the evidence, assess the credibility of witnesses, and determine ultimately what weight and worth to afford any particular aspect of proof." *Garner v. Garner*, 283 So. 3d 120, 140 (¶84) (Miss. 2019).  For this reason, this Court is not in the position to assign credibility to the evidence presented and we cannot say the chancery court erred in finding that this factor slightly favored Joshua.

### v.      Home, School, and Community Record of the Child

¶36.    The court found that this factor slightly favored Joshua.  Heather argues that the chancery court failed to consider the GAL's testimony that F.H. would do well in a new

---

[2] In his response to this factor and throughout his brief, Joshua's counsel made numerous personal attacks condemning Heather.  These attacks are not legal arguments and are not useful to this Court.  Counsel is reminded that our Rules specifically bar the use of disrespectful language.  *See* MRAP 28(l).

school because he has several relatives working in the school district Heather intended to enroll him in.

¶37.    The chancery court ultimately found that this factor favored Joshua. If Heather were granted custody of F.H., he would have to change school districts. Therefore, the chancery court did not err in deeming this factor favored Joshua.

### vi.    Separation of Siblings

¶38.    Heather takes issue with the chancery court's evaluation of the separation of siblings under the "other factors" prong of the *Albright* analysis. She claims the chancellor failed to address this factor and that it was not in F.H.'s best interest to separate him from his siblings.

¶39.    "There is no rule that requires chancellors to keep siblings together." *Davis v. Stevens*, 85 So. 3d 943, 951 (¶35) (Miss. Ct. App. 2012). "There is a preference for keeping siblings together, but the paramount concern is the best interest of the child." *Id*. "Separation of siblings "is only one factor" to be considered in making a custody award." *Id*.

¶40.    Despite Heather's argument, the record does reflect that the chancellor considered the separation of A.H. and F.H. But the court ultimately found that it did not outweigh the other factors that favored Joshua. Accordingly, we find no error.

¶41.    In conclusion, we affirm the trial court's determination of custody. In doing so, we hew closely to our standard of review, which defers greatly to the trial court's findings. For "[n]ot only did [the chancellor] have the benefit of [the parties'] words, he alone among the

10

judiciary observed their manner and demeanor." *Culbreath v. Johnson*, 427 So. 2d 705, 708 (Miss. 1983). "He was there on the scene," and "smelled the smoke of battle," and "sensed the interpersonal dynamics between the lawyers and the witnesses and himself." *Id.*

¶42. Here, the chancery court analyzed and applied the facts of the case to the *Albright* factors and provided an explanation for its findings in each. Accordingly, we cannot find that the chancery court abused its discretion.

## II. The chancery court erred by failing to address child support in relation to A.H.

¶43. For her final assignment of error, Heather argues that the chancery court erred by failing to address child support in relation to A.H.

¶44. "The duty of parents to support financially, as well as otherwise, their minor children is engrained in our law." *Adams v. Adams*, 467 So. 2d 211, 214 (Miss. 1985). "Both parents are obligated to provide financially for their children." *Forrest*, 941 So. 2d at 891 (¶11); *see* Miss. Code Ann. § 93-13-1 (Rev. 2013). "Upon divorce of parents, the chancery courts of our state may 'make all orders touching the care, custody, and maintenance of the children . . . .'" *Adams*, 467 So. 2d at 214 (quoting Miss. Code Ann. § 93-5-23 (1972)). "The statutory presumption is that the non-custodial parent will provide support and it will be in a specific percentage of gross income." *Forrest*, 741 So. 2d at 891 (¶11); *see* Miss. Code Ann. § 43-19-101 (Rev. 2015).

¶45. Once Joshua adopted A.H., he was endowed with all duties and obligations pertaining to A.H. "[T]he law of our state makes no distinction regarding the liability for support as

between natural parents and adoptive parents." *Adams*, 467 So. 2d at 214. Children and their adoptive parents "are vested with all of the rights, powers, duties and obligations, respectively, as if such child had been born to the adopting parents in lawful wedlock[.]" Miss. Code Ann. § 93-17-13(2) (Supp. 2014).

¶46.    It appears to be an oversight that child support was not addressed in relation to A.H., especially as it had been a source of conflict throughout the litigation. On at least three prior occasions Joshua requested the termination of his obligation to pay child support for A.H. In each instance, the trial court was adamant that the support obligation would continue.

¶47.    On appeal, Joshua argues that because his relationship with A.H. has soured beyond repair, he should not have to pay child support. Yet the trial court has not made a finding that the relationship is in such a state or that the presumption in favor of child support has been lifted. Because Joshua's duties and obligations to support A.H. vested upon his adoption of her as his daughter, we remand for the chancery court to determine whether child support for A.H. is warranted, and if so, in what amount.

¶48.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

    **BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR.**